UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

**08 CV 01858**

------------------------------------X

EVELYN A. JANKOUSKY,

         Plaintiff,

- against -

NORTH FORK BANCORPORATION INC.
d/b/a NORTH FORK BANK, and CAPITAL
ONE, FINANCIAL CORP.,

         Defendants.

------------------------------------X

ECF CASE

Case No.

COMPLAINT

PLAINTIFF DEMANDS A
TRIAL BY JURY



    Plaintiff Evelyn A. Jankousky ("plaintiff" or "Jankousky"), by her attorneys, Vladeck, Waldman, Elias & Engelhard, P.C., complains of defendants North Fork Bancorporation Inc. d/b/a North Fork Bank ("North Fork"), and Capital One Financial Corp. ("Capital One") (collectively "defendants" or "Bank") as follows:

### NATURE OF THIS ACTION

    1.    Plaintiff brings this action to remedy sex discrimination and retaliation for her opposition to unlawful employment actions in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq. ("Title VII"); the New York State Human Rights Law, Human Rights Law § 296 et seq. (the "Human Rights Law"); and the Administrative Code of the City of New York § 8-101 et seq. (the "City Law").

    2.    Plaintiff also brings this action to remedy unlawful reduction of her wages and retaliation for her opposition to unlawful employment actions, in violation of Labor Law § 190 et seq. ("Labor Law").

244436 v4

3. Plaintiff also asserts claims for breach of contract, promissory estoppel, unjust enrichment, and quantum meruit.

4. Plaintiff seeks injunctive and declaratory relief, compensatory and punitive damages, and other appropriate legal and equitable relief.

## JURISDICTION AND VENUE

5. This Court has jurisdiction over plaintiff's Title VII claims pursuant to 28 U.S.C. §§ 1331 and § 706(f)(3) of Title VII, 42 U.S.C. § 2000e § 5(f)(3). Pursuant to 28 U.S.C. § 1367, the Court has supplemental jurisdiction over plaintiff's Human Rights Law, City Law, Labor Law, contract, promissory estoppel, and quantum meruit claims.

6. Plaintiff filed a charge of discrimination with the United States Equal Employment Opportunity Commission (the "EEOC") on or about May 22, 2007, complaining of the acts of sex discrimination and retaliation for opposition to sex discrimination alleged herein. On or about December 5, 2007, the EEOC issued plaintiff a notice informing her of her right to sue defendant in federal court. Plaintiff has complied fully with all prerequisites required by Title VII.

7. Pursuant to § 8-502(c) of the City Law, prior to filing this Complaint, plaintiff served a copy of this complaint on the City of New York Commission on Human Rights and the Corporation Counsel of the City of New York.

8. Pursuant to § 215 of the Labor Law, prior to filing this complaint with the Court, plaintiff served this complaint on the Attorney General for the State of New York.

9. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because the unlawful practices complained of occurred within the Southern District of New York, defendants regularly do business within the Southern District of New York, and plaintiff is a resident of the Southern District of New York.

## PARTIES

10. North Fork is a Delaware corporation with its principal executive office at 275 Broadhallow Road, Melville, New York 11747.

11. Capital One is a Delaware corporation with its principal place of business at 1680 Capital One Drive, Suite 1400, Mclean, VA 22102.

12. On information and belief, North Fork is a wholly owned subsidiary of Capital One.

13. North Fork and Capital One are employers within the meaning of Title VII, the Human Rights Law and the City Law.

14. Jankousky is a woman who was employed as a branch manager at North Fork from 2001 until she was fired on March 12, 2007.

## FACTS

### Jankousky's 25-Year Unblemished Career

15. Jankousky holds a Masters Degree in Business Administration in finance and international business from New York University, received in 1991. She has worked in the finance industry for twenty-five years.

16. Jankousky began working at North Fork in 2001. She was Branch Manager of the Fifth Avenue Branch for about three years, until her employment was terminated on March 12, 2007.

17. While at North Fork, Jankousky achieved results that demonstrably exceeded those of many of her male peers. In two and a half years, she increased the deposits of the branch from approximately 250 to 400 million dollars. In 2006, she had less than $11,000 in

losses and earned several million dollars in net income for the bank. Her branch received a 98% approval rating from the bank's "mystery shopper" rating program.

18. As branch manager, Jankousky's job was primarily to bring in business and to expand and build relationships with customers in order to retain and increase the branch's profitable deposits; she also oversaw branch operations through two assistant managers.

19. Jankousky had authority to approve wire transfer request forms filled out by her subordinates. Jankousky's branch processed approximately 400 such forms each month, among the highest volume within the branch system. There was never a loss that resulted from any wire transfer that she approved.

20. Prior to 2006, Jankousky had received uniformly positive evaluations throughout her employment at the Bank, and had never been given an oral or written performance warning.

### New Supervisor Paul Santamaria

21. In early 2006, Jankousky's supervisor, who was a woman, was transferred. A man, Paul Santamaria ("Santamaria"), replaced the supervisor. Jankousky was one of three women out of thirteen branch managers reporting to Santamaria.

22. Santamaria was in turn supervised by Joe Roberto ("Roberto"). Jankousky was one of 7 women out of 44 branch managers who reported indirectly to Roberto.

23. The Fifth Avenue branch was one of North Fork's largest branches, in the top 10-15 of 350 branches. Jankousky was the only woman to manage a branch of comparable size.

24. From early in his supervision of Jankousky, Santamaria spoke to her in a derogatory and unprofessional tone, and other women told Jankousky that he spoke to them similarly. Jankousky has never observed him speak with a man in the same manner.

25. In May 2006, Roberto and Santamaria met with Jankousky. Santamaria stated that he wanted to "go over some things," and Jankousky understood that he was reviewing procedures as a routine part of his taking over as her supervisor. Roberto stated that he was sitting in because he was in the city for other meetings. At the time, neither Roberto nor Santamaria claimed that this discussion was performance counseling of any kind, nor did they state that Jankousky's job was in jeopardy. Jankousky was not shown anything in writing.

26. At that meeting, Santamaria raised questions about the way in which forms that the Fifth Avenue branch had submitted were filled out. For example, he criticized Jankousky for a minor error in the way one wire transfer form that she approved was completed, which did not affect the substance of the information on it and did not result in any loss.

27. The errors that Santamaria criticized Jankousky for did not place the bank at risk of loss. Moreover, on information and belief, they were less significant than errors made by male branch managers who were not criticized or disciplined.

28. On several subsequent occasions, Santamaria admonished Jankousky for approving forms that contained minor errors. For example, he berated her for signing an internal quarterly review form on which an assistant manager had printed, but not signed, her name next to various line items. In Jankousky's banking experience, no other supervisor has ever suggested that such matters indicate a problem with her performance as a manager.

29. In addition, Santamaria questioned Jankousky's business judgment in refunding fees to certain clients and admonished her for issuing such refunds. She had issued

these refunds to retain accounts against competitors who offered accounts without such fees. She always issued such refunds in accordance with the bank's written policy.

30. In the five years prior to Santamaria's assignment as Jankousky's supervisor, no other supervisor had questioned the refunds that Jankousky issued.

31. Jankousky nevertheless complied with Santamaria's criticism and she curtailed issuing such refunds.

32. Similarly, on subsequent occasions Santamaria denied Jankousky's requests to pay competitive interest rates to important clients.

33. As a result of the higher fees and lower interest, the branch lost several important clients.

### November 2006 Illegal Reduction of Jankousky's Compensation

34. Jankousky's compensation at North Fork consisted of a base salary and a bonus. The bonus was governed by North Fork's 2006 Retail Bank Incentive Programs ("Contract"), dated January 31, 2006, attached as Exhibit A.

35. Under the Contract, Jankousky and the Bank agreed that, in consideration for her work at the Bank, Jankousky would receive bonus pay calculated based on the dollar growth of the accounts at her branch.

36. The Contract provided: "<u>As of December 31, 2006</u>, the results will be calculated and the appropriate incentive <u>will be earned</u>." (Ex. A at 9, ¶ 2; emphasis added)

37. Although the Contract contained provisions concerning deposits transferred to other Bank branches (Ex. A at 10 ¶ 8), it contained no provision excluding deposit growth that resulted from money market accounts from the bonus calculation.

38. Jankousky received statements each month detailing this growth and the resulting bonus pool ("Monthly Statements"). She received such a statement in November 2006 reflecting a bonus pool for her branch of $238,974. (Ex. B)

39. Jankousky relied on the promises in the Contract and in the Monthly Statements by refraining from pursuing other job opportunities and by performing all of her job duties.

40. For example, another bank expressed an interest in hiring Jankousky, but she did not pursue the opportunity because the compensation would be less than the promised compensation at North Fork.

41. In late November 2006, however, Santamaria informed Jankousky that the bank was cutting her bonus by over 65%. He gave her a revised November 2006 statement reflecting a bonus pool of $82,399. (Ex. C)

42. On information and belief, no adjustments were made to the bonus pool of any other branch in 2006.

43. Jankousky asked Roberto for a meeting to appeal Santamaria's action. On approximately December 4, 2006, Jankousky met with Roberto. To her surprise, Santamaria was also present.

44. Santamaria and Roberto told Jankousky that it was "not in the spirit of incentive compensation" for her to receive the full promised compensation. They said that they believed the growth was because of a client's compliance with banking regulations and not because of Jankousky's work. They invoked no provision of the Contract to justify this alleged "banking regulations" exception.

244436 v4

7

45. Jankousky complained about the reduction of her bonus, and stated that she had earned the money.

46. Nevertheless, in an attempt to resolve the problem without resort to litigation, Jankousky also explained that she had a good relationship with the client, that the client had increased its deposits because of her work, and that the client had kept its business at North Fork even though it had been pursued by other banks.

47. Santamaria said that Jankousky had "no credibility" with him and that he had "no way of knowing" whether her explanation was true. He refused to take any steps to verify her statements independently, though she gave him several suggestions for doing so.

48. On information and belief, neither Santamaria nor Roberto has ever cut the bonus of any male branch manager.

<u>Santamaria Retaliates for Jankousky's Assertion of Her Labor Law Rights and Makes a Bad Faith Attempt to Deprive Jankousky of Her Bonus</u>

49. About two weeks after Jankousky's assertion that the Bank was illegally reducing her wages in violation of the Labor Law, on December 18, 2006, Santamaria gave her an "annual" performance review.

50. Jankousky had completed a self-evaluation of number ratings. Santamaria agreed with her numbers and asked her to sign, which she did.

51. Santamaria then showed Jankousky a narrative portion of the "evaluation" which he had previously kept hidden from her view, which was highly critical of her performance. He stated that she was a "total failure" as a branch manager.

52. Santamaria did not let Jankousky fully read or have a copy of the evaluation. When she told him that she had always received positive reviews and pointed out the measurable success of her branch, he said, "You got lucky; I'm watching you now."

53. Santamaria's criticisms increased in late December 2006 and early January 2007, sometimes reaching several times a day. Most of the alleged issues for which he criticized her resulted in no loss to the bank, and any losses were far smaller than losses suffered by other branch managers.

54. In early January 2007, Santamaria informed Jankousky that he was placing her on "final warning." Though he dubbed it "final," this was the first time Jankousky had been told she was being given a performance warning.

55. Santamaria showed Jankousky a list of false or minor quibbles with Jankousky's performance which he asked her to sign, but refused to give her a copy.

56. Santamaria expressly stated that Jankousky would be paid no bonus during a probation period that he said would run through April 9, 2007.

57. On information and belief, Santamaria created the unfounded "final warning" in response to Jankousky's assertion of her rights, because she was a woman, and in bad faith to deprive Jankousky of the benefits of the Contract.

58. On February 8, 2007, Jankousky's lawyers wrote to the bank in an attempt to resolve these issues. (Ex. D) The letter stated that the bank had violated the New York Labor Law and had discriminated against Jankousky on the basis of sex.

59. On March 12, 2007, less than five weeks after the letter from Jankousky's lawyers and before the alleged probation period had run, the bank fired Jankousky.

60. North Fork replaced Jankousky with a man.

61. Although Jankousky had earned the promised bonus as of December 31, 2006, and was employed on the date bonuses were paid, the bank failed to pay Jankousky any bonus compensation for 2006.

62. The Bank's discretion under the Contract, if any, was exercised in bad faith for the purpose of depriving Jankousky of the benefits of the Contract, namely the bonus compensation she had earned for her work.

63. The fair market value of Jankousky's work for the bank in 2006 was commensurate with the pay she would have received if she had been given her full bonus.

64. On information and belief, no other branch manager who reported indirectly to Roberto complained of violations of the New York Labor Law or of sex discrimination between January 2006 and March 2007. On information and belief, no other branch manager had his or her 2006 bonus cut or withheld.

65. On information and belief, the Bank did not fire, cut or eliminate the bonus of, or substantially discipline any of several of Jankousky's peers who committed errors that were similar to or more serious than those alleged for Jankousky, and resulted in losses to the Bank.

FIRST CAUSE OF ACTION
Sex Discrimination Under Title VII

66. Plaintiff repeats and realleges ¶¶ 1-65 above.

67. Defendants have discriminated against Jankousky in the terms and conditions of her employment on the basis of her sex in violation of Title VII.

68. Defendants knew that their actions constituted unlawful discrimination on the basis of sex and/or acted with reckless indifference to Jankousky's statutorily protected rights.

69. As a result of defendants' discriminatory acts, Jankousky has suffered, is suffering, and will continue to suffer irreparable injury, monetary damage, mental anguish, emotional distress, humiliation and other compensable damage unless and until this Court grants relief.

## SECOND CAUSE OF ACTION
### Retaliation Under Title VII

70. Plaintiff repeats and realleges ¶¶ 1-69 above.

71. By the acts and practices described above, defendants have retaliated against plaintiff for her opposition to unlawful employment practices in violation of Title VII.

72. Defendants knew that their actions constituted unlawful retaliation and/or acted with reckless indifference to plaintiff's statutorily protected rights.

73. As a result of defendants' retaliatory acts, plaintiff has suffered, is suffering, and will continue to suffer irreparable injury, monetary damage, mental anguish, emotional distress, humiliation and other compensable damage unless and until this Court grants relief.

## THIRD CAUSE OF ACTION
### Sex Discrimination Under the Human Rights Law

74. Plaintiff repeats and realleges ¶¶ 1-73 above.

75. By the acts and practices described above, defendants have discriminated against Jankousky in the terms and conditions of her employment based on her sex in violation of the Human Rights Law.

76. As a result of defendants' discriminatory acts, Jankousky has suffered and will continue to suffer irreparable injury, monetary damage, mental anguish, emotional distress, humiliation and other compensable damages.

## FOURTH CAUSE OF ACTION
### Retaliation Under the Human Rights Law

77. Plaintiff repeats and realleges ¶¶ 1-76 above.

78. By the acts and practices described above, defendants haves retaliated against plaintiff in violation of the Human Rights Law.

79. As a result of defendants' retaliatory acts, plaintiff has suffered and will continue to suffer irreparable injury, monetary damage, mental anguish, emotional distress, humiliation and other compensable damages.

## FIFTH CAUSE OF ACTION
### Sex Discrimination Under the City Law

80. Plaintiff repeats and realleges ¶¶ 1-79 above.

81. By the acts and practices described above, defendants have discriminated against plaintiff in the terms and conditions of her employment on the basis of sex in violation of the City Law.

82. Defendants knew that their actions constituted unlawful discrimination on the basis of sex and/or showed reckless disregard for plaintiff's statutorily protected rights.

83. Plaintiff is now suffering irreparable injury and monetary damages as a result of defendants' discriminatory conduct, and will continue to do so unless and until the Court grants relief.

SIXTH CAUSE OF ACTION
Retaliation Under the City Law

84. Plaintiff repeats and realleges ¶¶ 1-83 above.

85. By the acts and practices described above, defendants have retaliated against plaintiff for her opposition to unlawful employment practices in violation of the City Law.

86. Defendants knew that their actions constituted unlawful retaliation and/or showed reckless disregard for plaintiff's statutorily protected rights.

87. Plaintiff is now suffering irreparable injury and monetary damages as a result of defendants' discriminatory conduct, and will continue to do so unless and until the Court grants relief.

SEVENTH CAUSE OF ACTION
Breach Of Contract

88. Plaintiff repeats and realleges ¶¶ 1-87 above.

89. The Bank violated the Contract, and/or its implied covenant of good faith and fair dealing, as set forth above, by failing to pay Jankousky her full 2006 bonus.

90. Plaintiff has suffered damages and injury as a result of the Bank's breach.

EIGHTH CAUSE OF ACTION
(in the alternative)
Promissory Estoppel

91. Plaintiff repeats and realleges ¶¶ 1-90 above.

92. Defendants made a clear and definite promise to pay plaintiff a 2006 bonus as alleged above.

93. Plaintiff reasonably relied on defendants' promise to pay her a bonus as alleged above.

94. Plaintiff was not paid the 2006 bonus.

95. Defendants' failure to fulfill their promise has damaged plaintiff as described above.

### NINTH CAUSE OF ACTION
### (in the alternative)
### Quantum Meruit

96. Plaintiff repeats and realleges ¶¶ 1-95 above.

97. For 2006, claimant rendered work, services, and labor to defendants by performing her duties as described above.

98. Defendants accepted, profited, and benefited from claimant's work, services, and labor as described above.

99. Plaintiff had the reasonable expectation that she would be compensated for the work, services, and labor she rendered to defendants during the period described above.

100. Plaintiff was paid substantially less than the reasonable value of her work, services, and labor rendered to defendants as described above.

101. Because of defendants' failure to pay plaintiff for her work, services, and labor rendered as described above, plaintiff has been injured in an amount to be determined.

### TENTH CAUSE OF ACTION
### (in the alternative)
### Unjust Enrichment

102. Plaintiff repeats and realleges ¶¶ 1-101 above.

103. Plaintiff rendered work, services, and labor to defendants in 2006 as alleged above.

104. Defendants accepted, benefited, and profited from plaintiff's work, services, and labor rendered in 2006.

105. By defendants' failure to pay plaintiff her full bonus for her work, services, and labor rendered in 2006, defendants have been unjustly enriched in an amount to be determined.

### ELEVENTH CAUSE OF ACTION
### Labor Law

106. Plaintiff repeats and realleges ¶¶ 1-105 above.

107. By failing to pay Jankousky her 2006 bonus, the Bank has reduced Jankousky's wages in violation of Labor Law § 193(1).

108. Defendants' failure to pay Jankousky her full wages was "willful" within the meaning of Labor Law § 198(1-a).

### TWELFTH CAUSE OF ACTION
### Retaliation under the Labor Law

109. Plaintiff repeats and realleges ¶¶ 1-108 above.

110. By the conduct described above, defendants unlawfully retaliated against plaintiff for engaging in statutorily protected activity, in violation of the Labor Law.

111. Defendants knew that their actions constituted unlawful retaliation and/or showed reckless disregard for plaintiff's statutorily protected rights.

112. As a consequence of defendants' retaliatory actions in violation of the Labor Law, plaintiff is now suffering irreparable injury, emotional distress, and monetary damages and will continue to do so unless and until the Court grants relief.

113. As a consequence of defendants' retaliatory actions, plaintiff is entitled to recover from defendants, jointly and severally, lost pay, compensatory damages, punitive damages, costs, reasonable attorneys' fees, and other appropriate relief pursuant to N.Y. Labor Law § 215.

## PRAYER FOR RELIEF

WHEREFORE, plaintiff respectfully requests that this Court:

(a) declare that the acts and practices herein violate Title VII, the Human Rights Law, the City Law, the Labor Law, and New York common law;

(b) enjoin and permanently restrain these violations;

(c) direct defendants to take such affirmative steps as are necessary to ensure that the effects of these unlawful practices are eliminated and do not continue to affect plaintiff's employment opportunities;

(d) direct defendants to reinstate plaintiff to the position she would have occupied but for defendants' discriminatory and unlawful conduct and make her whole for all the earnings and other benefits she would have received but for defendants' unlawful acts and discriminatory treatment, including but not limited to lost wages and other lost benefits;

(e) enter judgment against defendant for damages for breach of the Contract in an amount to be determined;

(f) declare defendant in breach of the Contract;

(g) in the alternative, enter judgment against defendants for damages suffered as a result of plaintiff's reasonable reliance on the promise of the 2006 bonus;

(h) in the alternative, award plaintiff damages in quantum meruit to reasonably compensate her for the work, services, and labor rendered to defendants;

(i) in the alternative, enter judgment against defendants and order them to discharge profits they have accrued as a result of plaintiff's work, services, and labor rendered to them in 2006.

(j) direct defendants to pay plaintiff lost wages as a result of defendants' unlawful wage reduction;

(k) direct defendants to pay plaintiff an additional amount as liquidated damages as provided by the Labor Law;

(l) direct defendants to pay plaintiff compensatory damages, including damages for emotional distress, humiliation, and pain and suffering, pursuant to Title VII, the Human Rights Law, the City Law;

(m) direct defendants to pay an additional amount as punitive damages pursuant to Title VII and the City Law;

(n) award plaintiff such interest as is allowed by law;

(o) award plaintiff compensation to adjust for any adverse tax consequences of the award;

(p) award plaintiff her reasonable attorneys' fees and costs pursuant to the Title VII, the Labor Law, and the City Law;

(q) grant such other and further relief as this Court deems necessary and proper.

## DEMAND FOR TRIAL BY JURY

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, plaintiff demands a trial by jury in this action.

Dated: New York, New York
       February 25, 2008

                          VLADECK, WALDMAN, ELIAS
                          & ENGELHARD, P.C.

By: _____
      Karen Cacace (KC 3184)
      Maia Goodell (MG 8905)
      Attorneys for Plaintiff
      1501 Broadway, Suite 800
      New York, NY 10036
      (212) 403-7300