UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

EVELYN A. JANKOUSKY,

                     Plaintiff,

            - against -

NORTH FORK BANCORPORATION INC.,
CAPITAL ONE, FINANCIAL CORP.,
CAPITAL ONE, NATIONAL ASSOCIATION,
and NORTH FORK BANK,

                     Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

ECF CASE

Case No. 08 Civ. 01858 (PAC)

AMENDED COMPLAINT

PLAINTIFF DEMANDS A
TRIAL BY JURY

Plaintiff Evelyn A. Jankousky ("plaintiff" or "Jankousky"), by her attorneys, Vladeck, Waldman, Elias & Engelhard, P.C., complains of defendants North Fork Bancorporation Inc., Capital One Financial Corp., Capital One, National Association, and North Fork Bank (collectively "North Fork," "defendants," or "Bank") as follows:

<u>NATURE OF THIS ACTION</u>

      1.    Plaintiff brings this action to remedy sex discrimination and retaliation for her opposition to unlawful employment actions in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e <u>et seq.</u> ("Title VII"); the New York State Human Rights Law, Human Rights Law § 296 <u>et seq.</u> (the "Human Rights Law"); and the Administrative Code of the City of New York § 8-101 <u>et seq.</u> (the "City Law").

      2.    Plaintiff also brings this action to remedy unlawful reduction of her wages and retaliation for her opposition to unlawful employment actions, in violation of New York Labor Law § 190 <u>et seq.</u> ("Labor Law").

3.    Plaintiff also asserts claims for breach of contract, promissory estoppel, unjust enrichment, and quantum meruit.

4.    Plaintiff seeks injunctive and declaratory relief, compensatory and punitive damages, and other appropriate legal and equitable relief.

<u>JURISDICTION AND VENUE</u>

5.    This Court has jurisdiction over plaintiff's Title VII claims pursuant to 28 U.S.C. §§ 1331 and § 706(f)(3) of Title VII, 42 U.S.C. § 2000e § 5(f)(3).  Pursuant to 28 U.S.C. § 1367, the Court has supplemental jurisdiction over plaintiff's Human Rights Law, City Law, Labor Law, contract, promissory estoppel, and quantum meruit claims.

6.    Plaintiff filed a charge of discrimination with the United States Equal Employment Opportunity Commission (the "EEOC") on or about May 22, 2007, complaining of the acts of sex discrimination and retaliation for opposition to sex discrimination alleged herein.  On or about December 5, 2007, the EEOC issued plaintiff a notice informing her of her right to sue defendant in federal court.  Plaintiff has complied fully with all prerequisites required by Title VII.

7.    Pursuant to § 8-502(c) of the City Law, prior to filing this Amended Complaint, plaintiff served a copy of this complaint on the City of New York Commission on Human Rights and the Corporation Counsel of the City of New York.

8.    Pursuant to § 215 of the Labor Law, prior to filing this Amended Complaint, plaintiff served this complaint on the Attorney General for the State of New York.

9.    Venue is proper in this District pursuant to 28 U.S.C. § 1391 because the unlawful practices complained of occurred within the Southern District of New York, defendants regularly do business within the Southern District of New York, and plaintiff is a resident of the Southern District of New York.

<u>PARTIES</u>

10.     On information and belief, North Fork Bancorporation Inc. is a Delaware corporation with its principal executive office at 275 Broadhallow Road, Melville, New York 11747.  On information and belief, North Fork Bank was a principal, wholly owned subsidiary of North Fork Bancorporation Inc.

11.     On information and belief, Capital One, Financial Corp. is a Delaware corporation with its principal place of business at 1680 Capital One Drive, Suite 1400, Mclean, VA 22102.

12.     On information and belief, Capital One, National Association is a Louisiana association with its principal place of business at 313 Carondelet Street, New Orleans, LA 70130.  On information and belief, Capital One, National Association is a principal, wholly owned subsidiary of Capital One, Financial Corp.

13.     On information and belief, North Fork Bancorporation Inc., Capital One, Financial Corp., Capital One, National Association and North Fork Bank are employers within the meaning of Title VII, the Human Rights Law and the City Law.

14.     Jankousky is a woman who was employed as a branch manager at the entity doing business as North Fork Bank from 2001 until she was fired on March 12, 2007.

15.     On information and belief, Capital One Financial Corp. and/or Capital One, National Association acquired North Fork Bancorporation, Inc., including North Fork Bank, in December 2006.

## FACTS

### Jankousky's 25-Year Unblemished Career

16.     Jankousky holds a Masters Degree in Business Administration in finance and international business from New York University, received in 1991.  She has worked in the finance industry for twenty-five years.

17.     Jankousky began working at North Fork in 2001.  She was Branch Manager of the Fifth Avenue Branch for about three years, until her employment was terminated on March 12, 2007.

18.     While at North Fork, Jankousky achieved results that demonstrably exceeded those of many of her male peers.  In two and a half years, she increased the deposits of the branch from approximately 250 to 400 million dollars.  In 2006, she had less than $11,000 in losses and earned several million dollars in net income for the bank.  Her branch received a 98% approval rating from the bank's "mystery shopper" rating program.

19.     As branch manager, Jankousky's job was primarily to bring in business and to expand and build relationships with customers in order to retain and increase the branch's profitable deposits; she also oversaw branch operations through two assistant managers.

20.     Jankousky had authority to approve wire transfer request forms filled out by her subordinates.  Jankousky's branch processed approximately 400 such forms each month, among the highest volume within the branch system.  There was never a loss that resulted from any wire transfer that she approved.

21.     Prior to 2006, Jankousky had received uniformly positive evaluations throughout her employment at the Bank, and had never been given an oral or written performance warning.

251417 v1                                    4

New Supervisor Paul Santamaria

22.    In early 2006, Jankousky's supervisor, who was a woman, was transferred. A man, Paul Santamaria ("Santamaria"), replaced the supervisor. Jankousky was one of three women out of thirteen branch managers reporting to Santamaria.

23.    Santamaria was in turn supervised by Joe Roberto ("Roberto"). Jankousky was one of 7 women out of 44 branch managers who reported indirectly to Roberto.

24.    The Fifth Avenue branch was one of North Fork's largest branches, in the top 10-15 of 350 branches. Jankousky was the only woman to manage a branch of comparable size.

25.    From early in his supervision of Jankousky, Santamaria spoke to her in a derogatory and unprofessional tone, and other women told Jankousky that he spoke to them similarly. Jankousky has never observed him speak with a man in the same manner.

26.    In May 2006, Roberto and Santamaria met with Jankousky. Santamaria stated that he wanted to "go over some things," and Jankousky understood that he was reviewing procedures as a routine part of his taking over as her supervisor. Roberto stated that he was sitting in because he was in the city for other meetings. At the time, neither Roberto nor Santamaria claimed that this discussion was performance counseling of any kind, nor did they state that Jankousky's job was in jeopardy. Jankousky was not shown anything in writing.

27.    At that meeting, Santamaria raised questions about the way in which forms that the Fifth Avenue branch had submitted were filled out. For example, he criticized Jankousky for a minor error in the way one wire transfer form that she approved was completed, which did not affect the substance of the information on it and did not result in any loss.

28.    The errors that Santamaria criticized Jankousky for did not place the bank at risk of loss.  Moreover, on information and belief, they were less significant than errors made by male branch managers who were not criticized or disciplined.

29.    On several subsequent occasions, Santamaria admonished Jankousky for approving forms that contained minor errors.  For example, he berated her for signing an internal quarterly review form on which an assistant manager had printed, but not signed, her name next to various line items.  In Jankousky's banking experience, no other supervisor has ever suggested that such matters indicate a problem with her performance as a manager.

30.    In addition, Santamaria questioned Jankousky's business judgment in refunding fees to certain clients and admonished her for issuing such refunds.  She had issued these refunds to retain accounts against competitors who offered accounts without such fees. She always issued such refunds in accordance with the bank's written policy.

31.    In the five years prior to Santamaria's assignment as Jankousky's supervisor, no other supervisor had questioned the refunds that Jankousky issued.

32.    Jankousky nevertheless complied with Santamaria's criticism and she curtailed issuing such refunds.

33.    Similarly, on subsequent occasions Santamaria denied Jankousky's requests to pay competitive interest rates to important clients.

34.    As a result of the higher fees and lower interest, the branch lost several important clients.

<u>November 2006 Illegal Reduction of Jankousky's Compensation</u>

35.     Jankousky's compensation at North Fork consisted of a base salary and a bonus.  The bonus was governed by North Fork's 2006 Retail Bank Incentive Programs ("Contract"), dated January 31, 2006, attached as Exhibit A.

36.     Under the Contract, Jankousky and the Bank agreed that, in consideration for her work at the Bank, Jankousky would receive bonus pay calculated based on the dollar growth of the accounts at her branch.

37.     The Contract provided: "<u>As of December 31, 2006</u>, the results will be calculated and the appropriate incentive <u>will be earned</u>." (Ex. A at 9, ¶ 2; emphasis added)

38.     Although the Contract contained provisions concerning deposits transferred to other Bank branches (Ex. A at 10 ¶ 8), it contained no provision excluding deposit growth that resulted from money market accounts from the bonus calculation.

39.     Jankousky received statements each month detailing this growth and the resulting bonus pool ("Monthly Statements").  She received such a statement in November 2006 reflecting a bonus pool for her branch of $238,974.  (Ex. B)

40.     Jankousky relied on the promises in the Contract and in the Monthly Statements by refraining from pursuing other job opportunities and by performing all of her job duties.

41.     For example, another bank expressed an interest in hiring Jankousky, but she did not pursue the opportunity because the compensation would be less than the promised compensation at North Fork.

42.     In late November 2006, however, Santamaria informed Jankousky that the bank was cutting her bonus by over 65%.  He gave her a revised November 2006 statement reflecting a bonus pool of $82,399.  (Ex. C)

43.     On information and belief, no adjustments were made to the bonus pool of any other branch in 2006.

44.     Jankousky asked Roberto for a meeting to appeal Santamaria's action.  On approximately December 4, 2006, Jankousky met with Roberto.  To her surprise, Santamaria was also present.

45.     Santamaria and Roberto told Jankousky that it was "not in the spirit of incentive compensation" for her to receive the full promised compensation.  They said that they believed the growth was because of a client's compliance with banking regulations and not because of Jankousky's work.  They invoked no provision of the Contract to justify this alleged "banking regulations" exception.

46.     Jankousky complained about the reduction of her bonus, and stated that she had earned the money.

47.     Nevertheless, in an attempt to resolve the problem without resort to litigation, Jankousky also explained that she had a good relationship with the client, that the client had increased its deposits because of her work, and that the client had kept its business at North Fork even though it had been pursued by other banks.

48.     Santamaria said that Jankousky had "no credibility" with him and that he had "no way of knowing" whether her explanation was true.  He refused to take any steps to verify her statements independently, though she gave him several suggestions for doing so.

49.     On information and belief, neither Santamaria nor Roberto has ever cut the bonus of any male branch manager.

### Santamaria Retaliates for Jankousky's Assertion of Her Labor Law Rights and Makes a Bad Faith Attempt to Deprive Jankousky of Her Bonus

50.     About two weeks after Jankousky's assertion that the Bank was illegally reducing her wages in violation of the Labor Law, on December 18, 2006, Santamaria gave her an "annual" performance review.

51.     Jankousky had completed a self-evaluation of number ratings.  Santamaria agreed with her numbers and asked her to sign, which she did.

52.     Santamaria then showed Jankousky a narrative portion of the "evaluation" which he had previously kept hidden from her view, which was highly critical of her performance.  He stated that she was a "total failure" as a branch manager.

53.     Santamaria did not let Jankousky fully read or have a copy of the evaluation.  When she told him that she had always received positive reviews and pointed out the measurable success of her branch, he said, "You got lucky; I'm watching you now."

54.     Santamaria's criticisms increased in late December 2006 and early January 2007, sometimes reaching several times a day.  Most of the alleged issues for which he criticized her resulted in no loss to the bank, and any losses were far smaller than losses suffered by other branch managers.

55.     In early January 2007, Santamaria informed Jankousky that he was placing her on "final warning."  Though he dubbed it "final," this was the first time Jankousky had been told she was being given a performance warning.

56.    Santamaria showed Jankousky a list of false or minor quibbles with Jankousky's performance which he asked her to sign, but refused to give her a copy.

57.    Santamaria expressly stated that Jankousky would be paid no bonus during a probation period that he said would run through April 9, 2007.

58.    On information and belief, Santamaria created the unfounded "final warning" in response to Jankousky's assertion of her rights, because she was a woman, and in bad faith to deprive Jankousky of the benefits of the Contract.

59.    On February 8, 2007, Jankousky's lawyers wrote to the bank in an attempt to resolve these issues.  (Ex. D)  The letter stated that the bank had violated the New York Labor Law and had discriminated against Jankousky on the basis of sex.

60.    On March 12, 2007, less than five weeks after the letter from Jankousky's lawyers and before the alleged probation period had run, the bank fired Jankousky.

61.    North Fork replaced Jankousky with a man.

62.    Although Jankousky had earned the promised bonus as of December 31, 2006, and was employed on the date bonuses were paid, the bank failed to pay Jankousky any bonus compensation for 2006.

63.    The Bank's discretion under the Contract, if any, was exercised in bad faith for the purpose of depriving Jankousky of the benefits of the Contract, namely the bonus compensation she had earned for her work.

64.    The fair market value of Jankousky's work for the bank in 2006 was commensurate with the pay she would have received if she had been given her full bonus.

65.    On information and belief, no other branch manager who reported indirectly to Roberto complained of violations of the New York Labor Law or of sex

discrimination between January 2006 and March 2007. On information and belief, no other branch manager had his or her 2006 bonus cut or withheld.

66. On information and belief, the Bank did not fire, cut or eliminate the bonus of, or substantially discipline any of several of Jankousky's peers who committed errors that were similar to or more serious than those alleged for Jankousky, and resulted in losses to the Bank.

FIRST CAUSE OF ACTION
Sex Discrimination Under Title VII

67. Plaintiff repeats and realleges ¶¶ 1-66 above.

68. Defendants have discriminated against Jankousky in the terms and conditions of her employment on the basis of her sex in violation of Title VII.

69. Defendants knew that their actions constituted unlawful discrimination on the basis of sex and/or acted with reckless indifference to Jankousky's statutorily protected rights.

70. As a result of defendants' discriminatory acts, Jankousky has suffered, is suffering, and will continue to suffer irreparable injury, monetary damage, mental anguish, emotional distress, humiliation and other compensable damage unless and until this Court grants relief.

SECOND CAUSE OF ACTION
Retaliation Under Title VII

71. Plaintiff repeats and realleges ¶¶ 1-70 above.

72. By the acts and practices described above, defendants have retaliated against plaintiff for her opposition to unlawful employment practices in violation of Title VII.

73.     Defendants knew that their actions constituted unlawful retaliation and/or acted with reckless indifference to plaintiff's statutorily protected rights.

74.     As a result of defendants' retaliatory acts, plaintiff has suffered, is suffering, and will continue to suffer irreparable injury, monetary damage, mental anguish, emotional distress, humiliation and other compensable damage unless and until this Court grants relief.

### THIRD CAUSE OF ACTION
### Sex Discrimination Under the Human Rights Law

75.     Plaintiff repeats and realleges ¶¶ 1-74 above.

76.     By the acts and practices described above, defendants have discriminated against Jankousky in the terms and conditions of her employment based on her sex in violation of the Human Rights Law.

77.     As a result of defendants' discriminatory acts, Jankousky has suffered and will continue to suffer irreparable injury, monetary damage, mental anguish, emotional distress, humiliation and other compensable damages.

### FOURTH CAUSE OF ACTION
### Retaliation Under the Human Rights Law

78.     Plaintiff repeats and realleges ¶¶ 1-77 above.

79.     By the acts and practices described above, defendants haves retaliated against plaintiff in violation of the Human Rights Law.

80.     As a result of defendants' retaliatory acts, plaintiff has suffered and will continue to suffer irreparable injury, monetary damage, mental anguish, emotional distress, humiliation and other compensable damages.

FIFTH CAUSE OF ACTION
Sex Discrimination Under the City Law

81.    Plaintiff repeats and realleges ¶¶ 1-80 above.

82.    By the acts and practices described above, defendants have discriminated against plaintiff in the terms and conditions of her employment on the basis of sex in violation of the City Law.

83.    Defendants knew that their actions constituted unlawful discrimination on the basis of sex and/or showed reckless disregard for plaintiff's statutorily protected rights.

84.    Plaintiff is now suffering irreparable injury and monetary damages as a result of defendants' discriminatory conduct, and will continue to do so unless and until the Court grants relief.

SIXTH CAUSE OF ACTION
Retaliation Under the City Law

85.    Plaintiff repeats and realleges ¶¶ 1-84 above.

86.    By the acts and practices described above, defendants have retaliated against plaintiff for her opposition to unlawful employment practices in violation of the City Law.

87.    Defendants knew that their actions constituted unlawful retaliation and/or showed reckless disregard for plaintiff's statutorily protected rights.

88.    Plaintiff is now suffering irreparable injury and monetary damages as a result of defendants' discriminatory conduct, and will continue to do so unless and until the Court grants relief.

## SEVENTH CAUSE OF ACTION
### Breach Of Contract

89.    Plaintiff repeats and realleges ¶¶ 1-88 above.

90.    The Bank violated the Contract, and/or its implied covenant of good faith and fair dealing, as set forth above, by failing to pay Jankousky her full 2006 bonus.

91.    Plaintiff has suffered damages and injury as a result of the Bank's breach.

## EIGHTH CAUSE OF ACTION
### (in the alternative)
### Promissory Estoppel

92.    Plaintiff repeats and realleges ¶¶ 1-91 above.

93.    Defendants made a clear and definite promise to pay plaintiff a 2006 bonus as alleged above.

94.    Plaintiff reasonably relied on defendants' promise to pay her a bonus as alleged above.

95.    Plaintiff was not paid the 2006 bonus.

96.    Defendants' failure to fulfill their promise has damaged plaintiff as described above.

## NINTH CAUSE OF ACTION
### (in the alternative)
### Quantum Meruit

97.    Plaintiff repeats and realleges ¶¶ 1-96 above.

98.    For 2006, claimant rendered work, services, and labor to defendants by performing her duties as described above.

99.    Defendants accepted, profited, and benefited from claimant's work, services, and labor as described above.

100.    Plaintiff had the reasonable expectation that she would be compensated for the work, services, and labor she rendered to defendants during the period described above.

101.    Plaintiff was paid substantially less than the reasonable value of her work, services, and labor rendered to defendants as described above.

102.    Because of defendants' failure to pay plaintiff for her work, services, and labor rendered as described above, plaintiff has been injured in an amount to be determined.

TENTH CAUSE OF ACTION
(in the alternative)
Unjust Enrichment

103.    Plaintiff repeats and realleges ¶¶ 1-102 above.

104.    Plaintiff rendered work, services, and labor to defendants in 2006 as alleged above.

105.    Defendants accepted, benefited, and profited from plaintiff's work, services, and labor rendered in 2006.

106.    By defendants' failure to pay plaintiff her full bonus for her work, services, and labor rendered in 2006, defendants have been unjustly enriched in an amount to be determined.

ELEVENTH CAUSE OF ACTION
Labor Law

107.    Plaintiff repeats and realleges ¶¶ 1-106 above.

108.    By failing to pay Jankousky her 2006 bonus, the Bank has reduced Jankousky's wages in violation of Labor Law § 193(1).

109.    Defendants' failure to pay Jankousky her full wages was "willful" within the meaning of Labor Law § 198(1-a).

TWELFTH CAUSE OF ACTION
Retaliation under the Labor Law

110.    Plaintiff repeats and realleges ¶¶ 1-109 above.

111.    By the conduct described above, defendants unlawfully retaliated against plaintiff for engaging in statutorily protected activity, in violation of the Labor Law.

112.    Defendants knew that their actions constituted unlawful retaliation and/or showed reckless disregard for plaintiff's statutorily protected rights.

113.    As a consequence of defendants' retaliatory actions in violation of the Labor Law, plaintiff is now suffering irreparable injury, emotional distress, and monetary damages and will continue to do so unless and until the Court grants relief.

114.    As a consequence of defendants' retaliatory actions, plaintiff is entitled to recover from defendants, jointly and severally, lost pay, compensatory damages, punitive damages, costs, reasonable attorneys' fees, and other appropriate relief pursuant to N.Y. Labor Law § 215.

PRAYER FOR RELIEF

WHEREFORE, plaintiff respectfully requests that this Court:

(a)    declare that the acts and practices herein violate Title VII, the Human Rights Law, the City Law, the Labor Law, and New York common law;

(b)    enjoin and permanently restrain these violations;

(c)    direct defendants to take such affirmative steps as are necessary to ensure that the effects of these unlawful practices are eliminated and do not continue to affect plaintiff's employment opportunities;

251417 v1                                16

(d)    direct defendants to reinstate plaintiff to the position she would have occupied but for defendants' discriminatory and unlawful conduct and make her whole for all the earnings and other benefits she would have received but for defendants' unlawful acts and discriminatory treatment, including but not limited to lost wages and other lost benefits;

(e)    enter judgment against defendant for damages for breach of the Contract in an amount to be determined;

(f)    declare defendant in breach of the Contract;

(g)    in the alternative, enter judgment against defendants for damages suffered as a result of plaintiff's reasonable reliance on the promise of the 2006 bonus;

(h)    in the alternative, award plaintiff damages in quantum meruit to reasonably compensate her for the work, services, and labor rendered to defendants;

(i)    in the alternative, enter judgment against defendants and order them to discharge profits they have accrued as a result of plaintiff's work, services, and labor rendered to them in 2006.

(j)    direct defendants to pay plaintiff lost wages as a result of defendants' unlawful wage reduction;

(k)    direct defendants to pay plaintiff an additional amount as liquidated damages as provided by the Labor Law;

(l)    direct defendants to pay plaintiff compensatory damages, including damages for emotional distress, humiliation, and pain and suffering, pursuant to Title VII, the Human Rights Law, the City Law;

(m)    direct defendants to pay an additional amount as punitive damages pursuant to Title VII and the City Law;

(n)  award plaintiff such interest as is allowed by law;

(o)  award plaintiff compensation to adjust for any adverse tax consequences of the award;

(p)  award plaintiff her reasonable attorneys' fees and costs pursuant to the Title VII, the Labor Law, and the City Law;

(q)  grant such other and further relief as this Court deems necessary and proper.

<u>DEMAND FOR TRIAL BY JURY</u>

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, plaintiff demands a trial by jury in this action.

Dated: New York, New York
       May 2, 2008

VLADECK, WALDMAN, ELIAS
& ENGELHARD, P.C.

By:  _Karen Cacace_

Karen Cacace (KC 3184)
Maia Goodell (MG 8905)
Attorneys for Plaintiff
1501 Broadway, Suite 800
New York, NY  10036
(212) 403-7300

Exhibit A



# 2006
# Retail Bank
# Incentive Programs

## January 31, 2006

# 2006 Retail Bank Incentive Programs

## Contents

I.     Introduction ................................................................................ 1

II.    Branch Manager / Assistant Manager Incentive Program ................ 2

III.   DeNovo Branch Manager / Assistant Manager Incentive Program ......... 11

IV.    CSR/Teller Incentive Program ................................................. 13

V.     Business Specialist Incentive Program ...................................... 16

# 2006 Retail Bank Incentive Programs

## Contents

I.   Introduction _____ 1

II.  Branch Manager / Assistant Manager Incentive Program _____ 2

III. DeNovo Branch Manager / Assistant Manager Incentive Program _____ 11

IV.  CSR/Teller Incentive Program _____ 13

V.   Business Specialist Incentive Program _____ 16

North Fork Bank: 2006 Retail Bank Incentive Programs

## I.  Introduction

The way to compete effectively in a highly competitive environment is to get the entire team motivated to work toward achieving higher profitability for the company. Everyone in the organization should be guided by stated goals or expectations. Attaining and exceeding these goals will allow the employee to earn additional income over their base salary.

Objective
The objective is to create an entire team effort to increase Bank profitability.

Strategy
The strategy behind the various programs is to reward individuals for generating profitable client accounts and building multiple product relationships, while maintaining superior client service.

In addition, these programs will strengthen the company and overall client and shareholder satisfaction by bringing together our solid Branch Network and the dedicated support of the Divisional Lending Sales Manager, the Investment Sales Managers, Home Mortgage Experts, Private Bankers, Business Concierge, Cash Management Sales Managers, and Sales Coaches.

Benefits
The following is a list of the benefits to be realized from the Retail Incentive Programs:
- Increase profitability
- Increase product sales
- Improve cross selling skills
- Improve client service
- Reduce employee turnover
- Produce an overall corporate focus
- Make employees feel valued
- Increase responsiveness
- Improve training results
- Increase depth of client relationship
- Enhance loyalty and strengthen the franchise

North Fork Bank:  2006 Retail Bank Incentive Programs

## II.  Branch Manager / Assistant Manager Incentive Program

Plan number: 701

This is a 12 month program designed for Branch Managers and Assistant Branch Managers to grow branch profits by increasing deposits, increasing fee income, decreasing expenses, and referring business to other Departments thereby ensuring the maximization of long term shareholder value.

### Components of the Program

The program consists of 4 sections: Bonus, Servicing, Super Bonus, and Service Shop.

The annual base salary of each Manager and Assistant Manager includes a 10% draw. During 2006, the Manager and Assistant Manager will continue to get paid the same bi-weekly paycheck that they received as of 12/31/2005.  This bi-weekly paycheck allows the Branch Manager and Assistant Manager to draw into their 2006 bonus.  In addition, this will allow benefits to remain the same.

### Bonus

The Bonus section consists of the following categories:
- Non-Public Demand Deposit Account (DDA) Deposit Growth
- Non-Public Core Interest Bearing Account (IBA) Deposit Growth
- Banking Fee Income
- North Fork Financial Advisors (NFFA) Fee Income
- Expenses

Each category contains 4 targets or Tiers (the Fee Income sections have a 5th Tier). The target within each Tier is based on the 2006 Budget with the Tier 2 target being equal to the 2006 Budget, subject to a minimum growth requirement.

In the Non-Public DDA Growth and Non-Public Core IBA Growth categories, the incentive is based on a fixed number of basis points that will be paid on the amount of deposit growth, provided Tier 1 is achieved.  The basis point incentive increases as each subsequent tier is achieved.  (A basis point is equal to $1/100^{th}$ of one percent.  For example, 15 basis points equals 0.15% and 100 basis points equals 1.00%.)

North Fork Bank:  2006 Retail Bank Incentive Programs

**Non-Public DDA Growth:**  DDA deposits are non-interest-bearing checking deposits. The full amount of the actual dollar growth will receive the basis point incentive of the highest tier achieved.

There are 4 Tiers in the DDA category:

- The Tier 1 target is the 2005 Actual plus 80% of budgeted growth. The Tier 1 incentive is 25 basis points.

- The Tier 2 target is the 2006 Budget.  The minimum growth requirement is 5%.  If the budgeted growth is less than 5%, the 2006 Budget will be increased to equal 105% of the 2005 Actual. The Tier 2 incentive is 35 basis points.

- The Tier 3 target is the 2005 Actual plus 125% of budgeted growth. The Tier 3 incentive is 45 basis points.

- The Tier 4 target is the 2005 Actual plus 150% of budgeted growth. The Tier 4 incentive is 55 basis points.

### Non-Public DDA Example

If the 2006 Budget is $6,250,000 and the 2005 Actual was $5,000,000 then your budgeted growth is $1,250,000.

The Tier 1 target is the 2005 Actual plus 80% of budgeted growth.
= $5,000,000 + (80% of $1,250,000)
= $5,000,000 + $1,000,000
= $6,000,000.

The Tier 2 target is equal to the 2006 Budget, or $6,250,000 in this example.

The Tier 3 target is the 2005 Actual plus 125% of budgeted growth.
= $5,000,000 + (125% of $1,250,000)
= $5,000,000 + $1,562,500
= $6,562,500

The Tier 4 target is the 2005 Actual plus 150% of budgeted growth.
= $5,000,000 + (150% of $1,250,000)
= $5,000,000 + $1,875,000
= $6,875,000

North Fork Bank: 2006 Retail Bank Incentive Programs

**Non-Public Core IBA Growth:** Core IBA deposits are interest-bearing deposits, other than Time Deposits. The full amount of the actual dollar growth will receive the basis point incentive of the highest tier achieved.

There are 4 Tiers in the Core IBA category:

— The Tier 1 target is the 2005 Actual plus 80% of budgeted growth.
   The Tier 1 incentive is 4 basis points.

— The Tier 2 target is the 2006 Budget. The minimum growth requirement is 10%. If the budgeted growth is less than 10%, the 2006 Budget will be increased to equal 110% of the 2005 Actual.
   The Tier 2 incentive is 6 basis points.

— The Tier 3 target is the 2005 Actual plus 120% of budgeted growth.
   The Tier 3 incentive is 8 basis points.

— The Tier 4 target is the 2005 Actual plus 140% of budgeted growth.
   The Tier 4 incentive is 10 basis points.

### Non-Public Core IBA Example

If the 2006 Budget is $12,500,000 and the 2005 Actual was $10,000,000 then your budgeted growth is $2,500,000.

The Tier 1 target is the 2005 Actual plus 80% of budgeted growth.
$$= \$10,000,000 + (80\% \text{ of } \$2,500,000)$$
$$= \$10,000,000 + \$2,000,000$$
$$= \$12,000,000.$$

The Tier 2 target is equal to the 2006 Budget, or $12,500,000 in this example.

The Tier 3 target is the 2005 Actual plus 120% of budgeted growth.
$$= \$10,000,000 + (120\% \text{ of } \$2,500,000)$$
$$= \$10,000,000 + \$3,000,000$$
$$= \$13,000,000$$

The Tier 4 target is the 2005 Actual plus 140% of budgeted growth.
$$= \$10,000,000 + (140\% \text{ of } \$2,500,000)$$
$$= \$10,000,000 + \$3,500,000$$
$$= \$13,500,000$$

North Fork Bank:  2006 Retail Bank Incentive Programs

The remaining categories in the Bonus section are focused on the management of fee income and controllable expenses.  The Incentive Program rewards the branch team for increasing their fee income and decreasing their controllable expenses.

**Fee Income: Banking** includes all Non-Interest Income other than NFFA income.

There are 5 Tiers in the Banking Fee Income category.

- The Tier 1 target is the 2006 Budget minus 2%.
  The Tier 1 incentive is 25% of the Tier 4 incentive.

- The Tier 2 target is the 2006 Budget.  The minimum growth requirement is 4%.  If the 2006 Budget is less than 104% of the 2005 Actual, the 2006 Budget will be increased to equal 104% of the 2005 Actual.
  The Tier 2 incentive is 50% of the Tier 4 incentive.

- The Tier 3 target is the 2006 Budget plus 5%.
  The Tier 3 incentive is 75% of the Tier 4 incentive.

- The Tier 4 target is the 2006 Budget plus 8%.
  The Tier 4 incentive is 10.63% of the total annual base salaries of the Manager and Assistant Manager(s).

- In Tier 5, the Branch can earn another $150 for every $15,000 in Banking Fee Income over the Tier 4 target.

**Fee Income: NFFA** includes all Fee Income generated from North Fork Financial Advisors activity.

There are 5 Tiers in the NFFA Fee Income category.

- The Tier 1 target is the 2006 Budget minus 2%.
  The Tier 1 incentive is 25% of the Tier 4 incentive.

- The Tier 2 target is the 2006 Budget.  The minimum growth requirement is 4%.  If the 2006 Budget is less than 104% of the 2005 Actual, the 2006 Budget will be increased to equal 104% of the 2005 Actual.
  The Tier 2 incentive is 50% of the Tier 4 incentive.

- The Tier 3 target is the 2006 Budget plus 5%.
  The Tier 3 incentive is 75% of the Tier 4 incentive.

- The Tier 4 target is the 2006 Budget plus 8%.
  The Tier 4 incentive is 2.13% of the total annual base salaries of the Manager and Assistant Manager(s).

- In Tier 5, the Branch can earn another $50 for every $5,000 in NFFA Fee Income over the Tier 4 target.

North Fork Bank:  2006 Retail Bank Incentive Programs

**Expenses** include the following controllable expenses:
- Salaries and Wages
- Overtime
- Temporary Help
- Floating Tellers
- Advertising and Promotions
- Legal & Professional Fees
- Carrier & Postage
- Supplies
- Telecomm & Data Processing
- Travel Entertainment and Seminars
- Other Operating & Admin Expenses.

There are 4 Tiers in the Expense category:

– The Tier 1 target is the 2006 Budget plus 5%.
  The Tier 1 incentive is 25% of the Tier 4 incentive.

– The Tier 2 target is the 2006 Budget.
  The Tier 2 incentive is 50% of the Tier 4 incentive.

– The Tier 3 target is the 2006 Budget minus 7%.
  The Tier 3 incentive is 75% of the Tier 4 incentive.

– The Tier 4 target is the 2006 Budget minus 10%.
  The Tier 4 incentive is 12.75% of the total annual base salaries of the Manager and Assistant Manager(s).

## Servicing

Each branch will receive an incentive for the Private Banking DDA deposits, Private Banking Core IBA deposits, and Public DDA deposits serviced by the branch.  The Servicing incentive is equal to 5 basis points of the 2006 average balance.  (Five basis points equals 0.05%.)

Example:  A branch services Private Banking DDA deposits with an average balance of $1,000,000.  The incentive is calculated as:

$$\$1,000,000 \times 5 \text{ basis points}$$
$$= \$1,000,000 \times 0.05\%$$
$$= \$500$$

## Super Bonus

The Super Bonus is equal to 15% of the total annual base salaries of the Manager and Assistant Manager(s).

The Super Bonus section consists of:
- Loans Outstanding
- Cash Management Points
- CRA Credit

Each branch has individual goals based on historic and demographic information. Upon reaching their goal, the Manager and Assistant Manager(s) will earn the incentive award. The branch may earn an incentive in any one of the three areas regardless of results in another area.

The **Loans Outstanding** portion is measured as the 2006 average amount of loans outstanding and includes SBFS loans only. Each branch has been assigned a dollar goal to achieve for the year. Each SBFS loan must be closed by 12/31/06 to qualify. Each closed loan must be new, funded, and active.

The Potential Incentive is equal to 7.5% of the total annual base salaries of the Manager and Assistant Manager(s). In addition, for every 10% in Loans Outstanding over the 2006 Target, the branch will earn an additional 5% of the Potential Incentive.

Example
The Potential Incentive is $6,000 and the 2006 Target is $1,000,000. For every $100,000 [10% of $1,000,000] over the 2006 Target, earn an additional $300 [5% of $6,000].

If the Average Loans Outstanding is less than $1,000,000 the branch will not earn the incentive.

If the Average Loans Outstanding is between $1,000,000 and $1,099,000 the branch will earn an incentive of $6,000 [the Potential Incentive].

If the Average Loans Outstanding is between $1,100,000 and $1,199,000 the branch will earn an incentive of $6,300 [the Potential Incentive plus the additional $300].

If the Average Loans Outstanding is between $1,200,000 and $1,299,000 the branch will earn an incentive of $6,600 [the Potential Incentive plus 2 times the additional $300].

The **Cash Management Points** portion includes the points earned on Cash Management products as described on the attached "2006 Cash Management Branch Incentive Point Menu."

Each Branch is assigned a separate goal for:
  (a) Cash Management Services & Merchant Services, and
  (b) Credit Card Sales.
Both of these goals must be achieved before any incentive is earned.  (The products within Cash Management Services must be set up and charged 1 month's fee.)  The 2006 Target is the sum of these 2 goals.

The Potential Incentive is equal to 6% of the total annual base salaries of the Manager and Assistant Manager(s).  The Potential Incentive will be earned when both goals have been achieved.

After both goals are achieved, the branch will earn an additional 5% of the Potential Incentive for every 25% in Total Cash Management Points over the 2006 Target.

> Example
> The Potential Incentive is $4,800 and the 2006 Target is 140 points. For every 35 points [25% of 140 points] over the 2006 Target, earn an additional $240 [5% of $4,800].
>
> If both goals (Cash Management Services & Merchant Services; Credit Card Sales) are not achieved, the branch will not earn the incentive.
>
> If both goals are achieved and the total points are between 140 and 174.75 the branch will earn an incentive of $4,800 [the Potential Incentive].
>
> If both goals are achieved and the total points are between 175 and 209.75 the branch will earn an incentive of $5,040 [the Potential Incentive plus the additional $240].
>
> If both goals are achieved and the total points are between 210 and 244.75 the branch will earn an incentive of $5,280 [the Potential Incentive plus 2 times the additional $240].

The **CRA Credits** portion includes CRA credits earned as determined by Stacey Cooper, CRA Officer.  Each branch must earn 4 CRA credits to earn the award.  Any Board or Advisory ongoing position counts as 4 CRA credits.

The Potential Incentive is equal to 1.5% of the total annual base salaries of the Manager and Assistant Manager(s).

North Fork Bank:  2006 Retail Bank Incentive Programs

## Service Shop

The Service Shop section allows the branch to earn an incentive if one or more Service Shop scores during 2006 receive a total score greater than 100%.  However, the branch may also lose incentive dollars if one or more Service Shop scores during 2006 receive a total score less than 80%.

For every Service Shop score above 100%, the "Incentive Before Shops & Draw" will be increased by 1%.

> ### Example
> If during 2006 Branch A received 3 Service Shops scores above 100%, the "Incentive Before Shops & Draw" for Branch A will increase by 3%.

Similarly, for every Service Shop score below 80%, the "Incentive Before Shops & Draw" will be reduced by 1%.

> ### Example
> If during 2006 Branch A received 2 Service Shops scores below 80%, the "Incentive Before Shops & Draw" for Branch A will be reduced by 2%.

The increase and reduction will be netted against each other to determine the Net Service Shops incentive.

> ### Example
> In the examples above Branch A had 3 scores above 100% and 2 scores below 80%.  Therefore, the Net Service Shop Incentive will equal positive 1% of the "Incentive Before Shops & Draw."
>
> ### Another example
> If Branch B had 1 score above 100% and 4 scores below 80%, the Net Service Shops incentive will equal negative 3% of the "Incentive Before Shops & Draw."

The "Incentive Before Shops & Draw" is the sum of the incentives earned in the Bonus, Servicing, and Super Bonus sections.

## Program Rules and Eligibility

1. All Deposit data are year-to-date averages as calculated by the Budget process.

2. As of December 31, 2006, the results will be calculated and the appropriate incentive will be earned.  All incentives earned will first be applied to the 10% draw that the Manager and Assistant Manager(s) have already received.

North Fork Bank:  2006 Retail Bank Incentive Programs

3. All incentives will be paid in February 2007.  The total incentive earned by each branch will be divided between the Manager and Assistant Manager(s) based on the percentage of each participant's annual salary.

4. Please note that any participant who earns less than the draw amount will have that amount added to the draw figure in 2007.  If there is a second year of not paying back the draw, then the actual base salary will be cut by the deficient amount for the Branch Manager and Assistant Manager(s).

5. If a Branch Manager or Assistant Manager is transferred to a Department prior to November 1, 2006, all earned bonus money is forfeited by that individual.

6. A Branch Manager or Assistant Manager who is hired after September 30, 2006 is not eligible for the Incentive Program until 2007.

7. A Branch Manager or Assistant Manager who is transferred to a different Branch after October 31, 2006 will remain in the prior Branch's program.

8. There will be no adjustments made for deposits under $500,000 that are moved to another branch.   Adjustments will be considered for deposits over $500,000 that are moved to another branch, losses that result from a robbery, or other unforeseen losses that occur through no fault of the branch.  All adjustments must be sent to the office of the Executive Vice President of Retail Banking.

9. If a Branch should fail an Audit, the Manager and Assistant Manager(s) will automatically be removed from the Incentive Program until the branch achieves a passing Audit. If a branch should receive a "Qualified Audit" and then receive an additional "Qualified Audit" upon the re-visit, they will be removed from the Incentive Program until a passing Audit is received.

10. All participants in the Incentive Program must be employed in the Branch Network on December 31, 2006 and must be employed by North Fork Bank on the date the incentive is paid in order to receive the incentive earned.  Incentive awards for employees who have been given a written warning (or may be under investigation for violations of law, regulation, or policy) may be suspended or forfeited at Management's discretion.  If the employee is under investigation, the suspended award can eventually be earned if the employee is cleared at the conclusion of the investigation.

11. Management reserves the right to modify this Incentive Program at anytime.

**North Fork Bank**  **2006 Branch Manager / Assistant Manager Incentive Program**

S A M P L E

Branch Manager: Simpson, Lisa
Branch: 123   Springfield
Asst Manager(s): Van Houten, Milhouse

POTENTIAL BONUS POOL:   $ 46,213   or more
DRAW:   $ 8,000

DRAW: 10%

| | 2005 Actual | Target Tier 1 | Target Tier 2 | Target Tier 3 | Target Tier 4 | Tier 5 | 2006 YTD Actual | 2006 YTD Incentive |
|---|---|---|---|---|---|---|---|---|
| **Non-Public DDA Deposit Growth** | | 80% of 2006 Budget $ Growth | 2006 Budget | 123% of 2006 Budget $ Growth | 150% of 2006 Budget $ Growth | | | $10,913 |
| Average Balance | $ 5,000,000 | $ 6,000,000 | $ 6,250,000 | $ 6,562,500 | $ 6,875,000 | | | |
| Growth $ | | $ 1,000,000 | $ 1,250,000 | $ 1,562,500 | $ 1,875,000 | | | |
| Growth % | | 20.0% | 25.0% | 31.3% | 37.5% | | | |
| Basis Point Incentive | | 25 | 35 | 45 | 55 | | | |
| **Non-Public Core IBA Deposit Growth** | | 80% of 2006 Budget $ Growth | 2006 Budget | 120% of 2006 Budget $ Growth | 140% of 2006 Budget $ Growth | | | $13,500 |
| Average Balance | $ 10,000,000 | $ 12,000,000 | $ 12,500,000 | $ 13,000,000 | $ 13,500,000 | | | |
| Growth $ | | $ 2,000,000 | $ 2,500,000 | $ 3,000,000 | $ 3,500,000 | | | |
| Growth % | | 20.0% | 25.0% | 30.0% | 35.0% | | | |
| Basis Point Incentive | | 4 | 6 | 9 | 10 | | | |
| **Fee Income: Banking** | | 98% of 2006 Budget | 2006 Budget | 105% of 2006 Budget | 108% of 2006 Budget | For every $15,000 over Tier 4, earn additional | | $4,600 |
| Fee Income | | $ 44,100 | $ 45,000 | $ 47,250 | $ 48,600 | $ 500 | | |
| Incentive | | $ 2,125 | $ 2,250 | $ 2,375 | $ 2,500 | $ 150 | | |
| **Fee Income: NFFA** | | 98% of 2006 Budget | 2006 Budget | 105% of 2006 Budget | 108% of 2006 Budget | For every $5,000 over Tier 4, earn additional | | $7,700 |
| Fee Income | | $ 8,820 | $ 9,000 | $ 9,450 | $ 9,720 | $ 500 | | |
| Incentive | | $ 425 | $ 450 | $ 475 | $ 500 | $ 50 | | |
| **Expenses** | | 105% of 2006 Budget | 2006 Budget | 93% of 2006 Budget | 90% of 2006 Budget | | | $10,200 |
| Expenses | | $ 367,500 | $ 350,000 | $ 325,500 | $ 315,000 | | | |
| Incentive | | $ 2,550 | $ 5,100 | $ 7,650 | $ 10,200 | | | |

| **Pricing** | 2006 YTD Average Balance | 2006 Target | Basis Point Incentive | YTD Incentive |
|---|---|---|---|---|
| Private Banking DDA Deposits | $ 1,000,000 | $ 1,000,000 | 5 | $ 500 |
| Private Banking Core IBA Deposits | $ 2,500,000 | $ 2,500,000 | 5 | $ 1,250 |
| Public DDA Deposits | $ 100,000 | $ 100,000 | 5 | $ 50 |

**Super Bonus**

| | Potential Incentive | 2006 YTD Actual | YTD Incentive |
|---|---|---|---|
| Loans Outstanding * | $ 6,000 | $ 1,150,000 | $ 6,000 |
| For every 10% in Loans Outstanding over the 2006 Target, earn an additional 5% of the Potential Incentive. | | | |
| For every $100,000 in Loans Outstanding over the 2006 Target, earn an additional $300. | | | $ 300 |
| Cash Management Points * | $ 4,800 | 20.0 | $ 4,800 |
| For every 25% in Cash Mgmt points over the 2006 Target, earn an additional 5% of the Potential Incentive. | | 24.0 | $ 0 |
| For every 5.0 in Cash Mgmt points over the 2006 Target, earn an additional $240. | | | |
| CRA Credits | $ 1,200 | 4 | 5 | $ 1,200 |
| * Must be closed by 12/31/2006 | | | |

**Service Shop**

For every Service Shop score above 100%, the "Incentive Before Shops & Draw" will increase by 1%.
Number of Service Shop scores above 100%:
For every Service Shop score below 80%, the "Incentive Before Shops & Draw" will decrease by 1%.
Number of Service Shop scores below 80%: 1

| **Bottom Line** | |
|---|---|
| Non-Public DDA | $ 10,913 |
| Non-Public Core IBA | $ 3,500 |
| Fee Income: Banking | $ 8,300 |
| Fee Income: NFFA | $ 1,700 |
| Expenses | $ 10,200 |
| Servicing | $ 1,800 |
| Super Bonus | $ 12,300 |
| Incentive Before Shops & Draw | $ 48,313 |
| Net Service Shop | $ 0 |
| Incentive Before Draw | $ 48,313 |
| Draw | $ (8,000) |
| **Total Incentive Pool** | $ 40,313 |

North Fork Bank:  2006 Retail Bank Incentive Programs

## III.  DeNovo Branch Manager / Assistant Manager Incentive Program

<u>Plan number: 701</u>

This program is designed for Branch Managers and Assistant Branch Managers of DeNovo branches to grow branch profits by increasing deposits and fee income.

## <u>Components of the Program</u>

The program consists of 3 sections:  Deposit Growth, Fee Income, and CRA Points.

<u>Deposit Growth</u>
The Deposit Growth section consists of the following categories:
- DDA Growth
- Core IBA Growth
- CD Growth

In each category, the branch will earn a percentage, stated in basis points, of the deposit growth.  The deposit growth is the average balance of deposits from when the branch opened through December 31, 2006.  DDA Growth will earn 50 basis points, Core IBA Growth will earn 20 basis points, and CD Growth will earn 10 basis points. (A basis point is equal to 1/100th of one percent.  For example, 20 basis points equals 0.20% and 100 basis points equals 1.00%.)

<u>Fee Income</u>
In this section, the branch will earn 10% of the Fee Income generated from when the branch opened through December 31, 2006.

<u>CRA Points</u>
In this section, the branch will earn $200 for each CRA point awarded from when the branch opened through December 31, 2006.  CRA points will be determined by Stacey Cooper, CRA Officer.

## <u>Program Rules and Eligibility</u>

1.  All Deposit data are average balances as calculated by the Budget process. Core IBA Deposits do not include Time Deposits.

# 2006 CASH MANAGEMENT
# BRANCH INCENTIVE POINT MENU

| | Point Value | Comments |
|---|---|---|

| Cash Management Services and Merchant Services | | |
|---|---|---|
| BAP eCash | 0.25 | Per Relationship |
| eCash Upgrade | 0.50 | Per Relationship |
| ACH Detailed Reporter | 0.50 | Per Account |
| Small Business eCash | 0.50 | Per Relationship |
| EE MM eCash | 0.50 | Per Relationship |
| T-Tax | 0.50 | Per Relationship |
| Payroll Connection | 0.50 | Per Relationship |
| ePay | 1.00 | Per Account |
| Federal Tax (eCash) | 1.00 | Per Relationship |
| Healthcare Messanger | 1.00 | Per Relationship |
| Zero Balance Account (ZBA) | 1.00 | Per Account |
| Fax Balance Reporter | 1.00 | Per Account |
| Touchtone Balance Reporter | 1.00 | 1 Point Per Charge (up to 3 accounts per charge) |
| Deposit Reconciliation | 1.00 | Per Relationship |
| Middle Market eCash | 1.50 | Per Relationship |
| Account Reconciliation | 2.00 | Per Relationship |
| Positive Pay | 2.00 | Per Relationship |
| eCash | 3.00 | Per Relationship |
| Controlled Disbursement | 3.00 | Per Account |
| Currency Services | 4.00 | Per Relationship |
| Lock Box | 4.00 | Per Relationship |
| P & H  ACH | 4.00 | Per Relationship |
| Merchant Services | 2.00 | 2 points per approved Merchant Processing relationship from a NFB approved vendor (ABC Global, RBS Lynk, Retriever, and Tri State). |

| | | |
|---|---|---|
| Credit Card Sales | 2.00 | 2 points per approved MBNA credit card.  Annual branch goal is 96 points.  Points earned in excess of 96 points will not be applied towards the Cash Management Services and Merchant Services goal. |

North Fork Bank:  2006 Retail Bank Incentive Programs

2. If a denovo branch opens on or before August 31, 2006, the Incentive Program will run through December 31, 2006.  If a denovo branch opens after August 31, 2006, the Incentive Program will run through December 31, 2007.

3. As of December 31, 2006, the results will be calculated and the appropriate Incentive will be earned.  The total bonus earned will be distributed as follows:
   - Branch Manager = 60%
   - Assistant Manager = 40%

4. All incentives will be paid in February 2007.

5. If a Branch Manager or Assistant Manager is transferred to a Department prior to November 1, 2006, all earned bonus money is forfeited by that individual.

6. A Branch Manager or Assistant Manager who is hired after September 30, 2006 is not eligible for the Incentive Program until 2007.

7. A Branch Manager or Assistant Manager who is transferred to a different Branch after October 31, 2006 will remain in the prior Branch's program.

8. There will be no adjustments made for deposits under $500,000 that are moved to another branch.  Adjustments will be considered for deposits over $500,000 that are moved to another branch, losses that result from a robbery, or other unforeseen losses that occur not at the fault of the branch.  All adjustments must be sent to the office of the Executive Vice President of Retail Banking.

9. If a Branch should fail an Audit, the Manager and Assistant Manager(s) will automatically be removed from the Incentive Program until the branch achieves a passing Audit. If a branch should receive a "Qualified Audit" and then receive an additional "Qualified Audit" upon the re-visit, they will be removed from the Incentive Program until a passing Audit is received.

10. All participants in the Incentive Program must be employed in the Branch Network on December 31, 2006 and must be employed by North Fork Bank on the date the incentive is paid in order to receive the incentive earned.  Incentive awards for employees who have been given a written warning (or may be under investigation for violations of law, regulation, or policy) may be suspended or forfeited at Management's discretion.  If the employee is under investigation, the suspended award can eventually be earned if the employee is cleared at the conclusion of the investigation.

11. Management reserves the right to modify this Incentive Program at anytime.

# North Fork Bank

## 2006 DeNovo Branch Incentive Program

**SAMPLE**

**Branch Number:** 123
**Branch Name:** Springfield
**Open Date:** 01/23/2006

**Branch Manager:** Krabappel,Edna
**Asst Manager(s):** Terwilliger,Robert

### Deposit Growth

|  | Basis Point Incentive | Average Balance | 2006 Growth | 2006 Incentive |
|---|---|---|---|---|
| DDA Growth | 50 | $ 0 | $ 0 | $ 0 |
| Core IBA Growth | 20 | $ 0 | $ 0 | $ 0 |
| CD Growth | 10 | $ 0 | $ 0 | $ 0 |

### Fees Income

| % Incentive | Actual | 2006 Incentive |
|---|---|---|
| 10% | $ 0 | $ 0 |

### CRA Points

| $ Incentive per Point | Actual | 2006 Incentive |
|---|---|---|
| $ 200 | 0 | $ 0 |

### DeNovo Branch Incentive Summary

| | |
|---|---|
| DDA Growth | $ 0 |
| Core IBA Growth | $ 0 |
| CD Growth | $ 0 |
| Fee Income | $ 0 |
| CRA Points | $ 0 |
| **Total Bonus Pool** | **$ 0** |

- If branch opens before August 31, 2006 the Incentive Program will run until December 31, 2006.
- If branch opens after August 31, 2006 the Incentive Program will run until December 31, 2007.
- Total Bonus Pool will be distributed as follows: Branch Manager 60% & Assistant Manager 40%.

North Fork Bank: 2006 Retail Bank Incentive Programs

## IV. CSR/Teller Incentive Program

<u>Plan Number: 729</u>

This is a monthly program in which each eligible CSR and Teller receives an incentive for opening and referring new accounts and providing excellent customer service. The monthly incentive is paid in the last pay period of the month following the month in which the incentive was earned.

## Components of the Program

The program is comprised of an Account Sales component and a Customer Service component.

<u>Account Sales</u>
Attached is a listing of the product codes and their assigned incentive amount. A product code not listed on the attached will not receive an incentive.

A CSR will receive the stated incentive for opening an account. In addition, if the account was referred by a CSR or Teller, that CSR or Teller will receive 50% of the stated incentive. An account is eligible for an incentive subject to the following terms:
- The specific product code of the account sold is included on the attached list.
- The account was opened with at least $25, except commercial accounts can be opened with $0 and club accounts can be opened with $5.

Referrals should be entered into CBS by the CSR at the time the account is opened. If a referral was not entered at the time of account opening, Branch Management can enter the referral into CBS (in the Branch Subsystem). Branch Management must be careful not to enter a referral into CBS if the referral was previously entered at the time of account opening. Back-office staff will monitor the referrals to ensure the validity of the data entered into CBS.

<u>Customer Service</u>
To emphasize the importance of Customer Service, every CSR and Teller is subject to an Internal Evaluation. This Internal Evaluation will be performed randomly, once per person per month. Evaluations will be performed by the Head Teller, Assistant Manager, or Branch Manager.

Evaluations will be conducted on the position in which more than 50% of the person's time is spent during the month. For example, if a person spends 5 days a month on the Platform and 15 days a month on the Teller line, that person will be evaluated as a Teller.

# Vision Statement

North Fork Bank is committed to being a premier financial services company. Through dedicated professionals we will create an atmosphere where personal service and quality products always exceed client and shareholder expectations.

North Fork Bank:  2006 Retail Bank Incentive Programs

The Internal Evaluation will be conducted on a single customer transaction.  The CSR or Teller will be evaluated on greeting skills, attitude, performance, closure skills, and appearance.

Each evaluation will result in an Evaluation Score.  The Evaluation Score will determine how much of that month's incentive will be included in the Payout:

| Evaluation Score | | Payout % |
|---|---|---|
| 100.0 % → 110.0 % | | 100 % → 110 % of Incentive |
| 90.0 % → 100.9 % | | 100 % of Incentive |
| 85.0 % → 89.9 % | | 75 % of Incentive |
| 80.0 % → 84.9 % | | 50 % of Incentive |
| less than 80 % | | 0% of Incentive |

Example 1

Joe CSR sold 2 accounts with a $10 incentive each, 3 accounts with an $8 incentive each, and 1 account with a $6 incentive.  Joe's Evaluation Score for the month was 87%.  The total incentive amount of the products sold is $50.00 [(2 x $10) + (3 x $8) + (1 x $6)].  However, because the Evaluation Score was between 85% and 89%, Joe's payout will be only $37.50, or 75% of the $50 incentive.

Example 2

Mary Teller referred 3 accounts with a $10 incentive each, 2 accounts with an $8 incentive each, and 4 accounts with a $3 incentive.  Mary's Evaluation Score for the month was 105%.  The total incentive amount of the products sold is $58.00 [(3 x $10) + (2 x $8) + (4 x $3)].  Since her Evaluation Score was greater than 100%, Mary's payout will be $60.90, or 105% of the $58 incentive.

**Important**

Branch Management must enter the Evaluation Scores into CBS on or before the last business day of the month (except Sunday).  If an Evaluation Score is not received for a given person for a given month, any incentive due to that person for that month will be forfeited, without exception.  The forfeited incentive will not carry forward to the following month.

## Program Rules and Eligibility

1. New employees of the bank are eligible to earn incentives immediately after they have finished training!  Every new employee is encouraged to participate in this program.

North Fork Bank:  2006 Retail Bank Incentive Programs

2. A person included in the Branch Manager / Assistant Branch Manager Incentive Program is not eligible to participate in the CSR/Teller Incentive Program.

3. Anyone found falsifying referrals or sales will be expelled from the Incentive Program indefinitely.  Persons who defraud this program may be documented which could lead to termination.  Examples of falsifying referrals or sales might be, but are not limited to:
   - Knowingly open an account in which a deposit will never be made, or without the client's approval.
   - Entering referrals or taking credit for referrals that have not closed (closed means that the account referred was opened on the system).
   - Adding additional referrals to opened accounts.

4. Any CSR or Teller who shows a year-to-date net difference of $500 or more is not eligible to participate in the CSR/Teller Incentive Program.

5. Any CSR who, through breach of policy, insufficient account holds, etc., causes the bank to take a loss of $500 or more, will be ineligible to earn incentive for 3 months and must not cause any other losses to exceed $500 within that 3 months.  Should that occur, the CSR will be ineligible to earn incentive for another 3 month period beginning with the date of the new loss.

6. Branch Management is responsible to ensure that employees are eligible to be paid and must inform their Sales Coach and/or Regional Administrator if someone is not eligible before the monthly payment is paid.  Overpayments or payments made in error in excess of $15 will be collected from the employee's next pay check, at the discretion of the EVP of Retail Banking.

7. Anyone resigning or terminated prior to an incentive pay date will forfeit all incentives due.

8. Management reserves the right to modify this Incentive Program at anytime.

North Fork Bank: 2006 Retail Bank Incentive Programs

## V.  Business Specialist Incentive Program

Plan number: 731

Note:  Prior to 2006, a Business Specialist was known as a Senior CSR.

The 2006 Business Specialist Incentive Program is designed for Business Specialists to help grow branch profits by increasing product sales and referring loans.

## Components of the Program

The program consists of 2 sections: Bonus and Super Bonus.

- The Bonus is equal to 28% of the annual base salary of the Business Specialist.
- The Super Bonus is equal to 7% of the annual base salary of the Business Specialist.

The minimum salary used in the incentive calculations is $40,000.  If the annual base salary of the Business Specialist is less than $40,000, the incentive calculations will use $40,000 as the annual salary.

Bonus

The Bonus section consists of the following categories:
- Business Product Sales
- Consumer Product Sales
- Loan Referrals
- Business Calls

Each category contains 4 targets or Tiers (the Business Product Sales and Loan Referral sections have a 5th Tier).  Each Business Specialist will be assigned individual goals based on historic and demographic information.  Upon reaching each goal, the Business Specialist will earn the incentive.  The Business Specialist may earn an incentive in any one of the four categories regardless of the results in another category.

The Tier 1 payout is 25%, Tier 2 is 50%, Tier 3 is 75%, and Tier 4 is 100%.

**Business Product Sales** is 30% of the Bonus.
- See attached for the list of eligible Business products.
- Only accounts opened by the Business Specialist will be included.
- Tier 5:  For every 50% increase of Tier 2 over Tier 4, earn an additional incentive equal to 1/3 of the Tier 4 incentive.

## 2006 CSR/Teller Incentive Program
## Sales and Referral Incentives
Effective February 1, 2006

### TRANSACTION ACCOUNTS

| PRODUCT CODE | PRODUCT DESCRIPTION | CUSTOMER | TYPE | SALES INCENTIVE | REFERRAL INCENTIVE |
|---|---|---|---|---|---|
| 3 | BUSINESS CHECKING | BUSINESS | DDA | $ 10.00 | $ 5.00 |
| 30 | ESSENTIAL BUSINESS CHECKING | BUSINESS | DDA | $ 10.00 | $ 5.00 |
| 70 | PROFESSIONAL BUSINESS CHECKING | BUSINESS | DDA | $ 10.00 | $ 5.00 |
| 155 | SMALL BUSINESS CHECKING | BUSINESS | DDA | $ 10.00 | $ 5.00 |
| 160 | BUSINESS ADVANTAGE PLUS CHECKING | BUSINESS | DDA | $ 10.00 | $ 5.00 |
| 32 | PERSONAL CHECKING | CONSUMER | DDA | $ 8.00 | $ 4.00 |
| 34 | PREMIER BANKING | CONSUMER | DDA | $ 8.00 | $ 4.00 |
| 39 | PREFERENCE 50 GOLD | CONSUMER | DDA | $ 8.00 | $ 4.00 |
| 89 | SELECT PERSONAL CHECKING | CONSUMER | DDA | $ 8.00 | $ 4.00 |
| 95 | ULTIMATE CHECKING | CONSUMER | DDA | $ 8.00 | $ 4.00 |
| 48 | STUDENT PRIVILEGE CHECKING | CONSUMER | DDA | $ 6.00 | $ 3.00 |
| 66 | UNION CLUB CHECKING | CONSUMER | DDA | $ 6.00 | $ 3.00 |
| 154 | SINCERELY FREE CHECKING | CONSUMER | DDA | $ 6.00 | $ 3.00 |
| 175 | CAREFREE CHECKING ACCOUNT | CONSUMER | DDA | $ 6.00 | $ 3.00 |
| 8 | BUSINESS CHECKING W/INTEREST | BUSINESS | DDA | $ 3.00 | $ 1.50 |
| 11 | BUSINESS MONEY MARKET | BUSINESS | MMA | $ 3.00 | $ 1.50 |
| 24 | BUSINESS STATEMENT SAVINGS | BUSINESS | SAV | $ 3.00 | $ 1.50 |
| 69 | BUSINESS MANHATTAN SPECIAL SAVINGS | BUSINESS | SAV | $ 3.00 | $ 1.50 |
| 17 | PREFERENCE 50 GOLD W/INTEREST | CONSUMER | DDA | $ 3.00 | $ 1.50 |
| 33 | PERSONAL CHECKING W/INTEREST | CONSUMER | DDA | $ 3.00 | $ 1.50 |
| 159 | NFB INCREDIBLE INTEREST CHECKING | CONSUMER | DDA | $ 3.00 | $ 1.50 |
| 605 | ONEPOINT MONEY MARKET PASSBOOK | CONSUMER | MMA | $ 3.00 | $ 1.50 |
| 726 | ONEPOINT MONEY MARKET | CONSUMER | MMA | $ 3.00 | $ 1.50 |
| 23 | PERSONAL STATEMENT SAVINGS | CONSUMER | SAV | $ 3.00 | $ 1.50 |
| 28 | MINOR STATEMENT SAVINGS | CONSUMER | SAV | $ 3.00 | $ 1.50 |
| 29 | STATEMENT HOLIDAY CLUB | CONSUMER | SAV | $ 3.00 | $ 1.50 |
| 53 | STUDENT PRIVILEGE STATEMENT SAVINGS | CONSUMER | SAV | $ 3.00 | $ 1.50 |
| 67 | UNION CLUB SAVINGS | CONSUMER | SAV | $ 3.00 | $ 1.50 |
| 68 | MANHATTAN SPECIAL SAVINGS | CONSUMER | SAV | $ 3.00 | $ 1.50 |
| 101 | PASSBOOK SAVINGS | CONSUMER | SAV | $ 3.00 | $ 1.50 |
| 102 | PASSBOOK MINOR SAVINGS | CONSUMER | SAV | $ 3.00 | $ 1.50 |
| 106 | PASSBOOK HOLIDAY CLUB | CONSUMER | SAV | $ 3.00 | $ 1.50 |
| 671 | PASSBOOK VACATION CLUB | CONSUMER | SAV | $ 3.00 | $ 1.50 |
| 672 | STATEMENT VACATION CLUB | CONSUMER | SAV | $ 3.00 | $ 1.50 |

| | | | | | |
|---|---|---|---|---|---|
| CERTIFICATE OF DEPOSIT ACCOUNTS | | | | $ 3.00 | $ 1.50 |
| ONLINE BANKING ACTIVATIONS | | | | NA | $ 3.00 |

North Fork Bank:  2006 Retail Bank Incentive Programs

**Consumer Product Sales** is 10% of the Bonus.
- See attached for the list of eligible Consumer products.
- Only accounts opened by the Business Specialist will be included.

**Loan Referrals** is 35% of the Bonus.
- The referred loan must be closed before December 31, 2006.
- Tier 5:  For every 10 loan referrals over Tier 4, earn an additional incentive of $600.

**Business Calls** is 25% of the Bonus.

Super Bonus

The Super Bonus section consists of the following categories:
- Cash Management
- CRA

Upon reaching each goal, the Business Specialist will earn the incentive.  The Business Specialist may earn an incentive in one of the categories regardless of the results in the other category.

The **Cash Management Points** portion is 80% of the Super Bonus.  Refer to the "Branch Manager / Assistant Manager Incentive Program" document for detailed information.

The **CRA Credits** portion is 20% of the Super Bonus.  CRA credits will be earned as determined by Stacey Cooper, CRA Officer.  Each Branch must earn 4 CRA credits to earn the award.  Any Board or Advisory ongoing position counts as 4 CRA credits.

## Program Rules and Eligibility

1. Any Business Specialist hired after August 31, 2006 is not eligible.

2. Any Business Specialist transferred after September 30, 2006 will retain the previously assigned goals.

3. Branch Management is responsible to ensure that employees are eligible to be paid and must inform their Sales Coach and/or Regional Administrator if someone is not eligible.

North Fork Bank: 2006 Retail Bank Incentive Programs

4. All incentives earned in this program will be paid in February 2007.

5. All participants in the Incentive Program must be employed in the Branch Network on December 31, 2006 and must be employed by North Fork Bank on the date the incentive is paid in order to receive the incentive earned. Incentive awards for employees who have been given a written warning (or may be under investigation for violations of law, regulation, or policy) may be suspended or forfeited at Management's discretion. If the employee is under investigation, the suspended award can eventually be earned if the employee is cleared at the conclusion of the investigation.

6. Anyone found falsifying referrals or sales will be expelled from the Incentive Program. Persons who defraud this program may be documented which could lead to termination. Examples of falsifying referrals or sales might be, but are not limited to:
   - Knowingly open an account in which a deposit will never be made, or without the client's approval.
   - Taking credit for a referral that has not closed.

7. Any Business Specialist who through breach of policy, insufficient account holds, etc., causes the bank to take a loss of $500 or more, will be ineligible to earn incentive for 90 days and must not cause any other losses to exceed $500 within that 3 months. Should that occur, the Business Specialist will be ineligible to earn incentive for another 90 day period beginning with the date of the new loss.

8. Management reserves the right to modify this Incentive Program at anytime.

# North Fork Bank

## 2006 Business Specialist Incentive Program

**S A M P L E**

Business Specialist: Muntz, Nelson
CBS User Profile: HA123456
Branch: 123 – Springfield

Division: D9
Region: R42

| Bonus: | 28% | $ 11,200 |
|---|---|---|
| Super Bonus: | 7% | $ 2,800 |
| Potential Incentive: | 35% | $ 14,000 |

### Bonus 28%

| | Tier 1 25% of Target | Tier 2 50% Target | Tier 3 75% of Target | Tier 4 100% of Target | Tier 5 | 2006 Actual | Tier Achieved | 2006 Incentive |
|---|---|---|---|---|---|---|---|---|
| **Product Sales: Business** 30% | | | | | | | | |
| # Sales | 75 | 100 | 125 | 150 | For every 50 over tier 4, earn additional | 200 | Tier 4 | |
| $ Incentive | $ 840 | $ 1,680 | $ 2,520 | $ 3,360 | $ 1,120 | | | $ 4,4 |
| **Product Sales: Consumer** 10% | | | | | | | | |
| # Sales | 45 | 60 | 75 | 90 | | 60 | Tier 2 | |
| $ Incentive | $ 280 | $ 560 | $ 840 | $ 1,120 | | | | $ 560 |
| **Loan Referrals (a)** 35% | | | | | | | | |
| # Loans | 36 | 48 | 60 | 72 | For every 10 over tier 4, earn additional | 48 | Tier 2 | |
| $ Incentive | $ 980 | $ 1,960 | $ 2,940 | $ 3,920 | $ 600 | | | $ 1,960 |
| **Business Calls** 25% | | | | | | | | |
| # Calls | 90 | 120 | 150 | 180 | | 120 | Tier 2 | |
| $ Incentive | $ 700 | $ 1,400 | $ 2,100 | $ 2,800 | | | | $ 1,400 |
| | | | | | | | | $ 8,400 |

(a) Must be closed by 12/31/2006.

### Super Bonus 7%

| | Target | 2006 YTD Actual | 2006 Incentive |
|---|---|---|---|
| 80% **Cash Management Points** | 140.0 | 150.0 | $ 2,240 |
| 20% **CRA Credits** | 4 | 5 | $ 560 |
| | | | $ 2,800 |

| Total Incentive: | $ 11,200 |
|---|---|

Any Business Specialist hired after 08/31/2006 is not eligible.

# 2006 Business Specialist Incentive Program
## Eligible Business and Consumer Products

### Business Products

| PRODUCT CODE | PRODUCT DESCRIPTION |
|---|---|
| 3 | BUSINESS CHECKING |
| 8 | BUSINESS CHECKING W/INTEREST |
| 11 | BUSINESS MONEY MARKET |
| 24 | BUSINESS STATEMENT SAVINGS |
| 30 | ESSENTIAL BUSINESS CHECKING |
| 69 | BUSINESS MANHATTAN SPECIAL SAVINGS |
| 70 | PROFESSIONAL BUSINESS CHECKING |
| 155 | SMALL BUSINESS CHECKING |
| 160 | BUSINESS ADVANTAGE PLUS CHECKING |

### Consumer Products

| PRODUCT CODE | PRODUCT DESCRIPTION |
|---|---|
| 17 | PREFERENCE 50 GOLD W/INTEREST |
| 23 | PERSONAL STATEMENT SAVINGS |
| 28 | MINOR STATEMENT SAVINGS |
| 29 | STATEMENT HOLIDAY CLUB |
| 32 | PERSONAL CHECKING |
| 33 | PERSONAL CHECKING W/INTEREST |
| 34 | PREMIER BANKING |
| 39 | PREFERENCE 50 GOLD |
| 48 | STUDENT PRIVILEGE CHECKING |
| 53 | STUDENT PRIVILEGE STATEMENT SAVINGS |
| 66 | UNION CLUB CHECKING |
| 67 | UNION CLUB SAVINGS |
| 68 | MANHATTAN SPECIAL SAVINGS |
| 89 | SELECT PERSONAL CHECKING |
| 95 | ULTIMATE CHECKING |
| 101 | PASSBOOK SAVINGS |
| 102 | PASSBOOK MINOR SAVINGS |
| 106 | PASSBOOK HOLIDAY CLUB |
| 154 | SINCERELY FREE CHECKING |
| 159 | NFB INCREDIBLE INTEREST CHECKING |
| 175 | CAREFREE CHECKING ACCOUNT |
| 605 | ONEPOINT MONEY MARKET PASSBOOK |
| 671 | PASSBOOK VACATION CLUB |
| 672 | STATEMENT VACATION CLUB |
| 726 | ONEPOINT MONEY MARKET |
| ALL CODES | CERTIFICATE OF DEPOSIT ACCOUNTS |

Exhibit B

# North Fork Bank

## 2006 Branch Manager/Assistant Manager Incentive Program

Branch Manager: **Jankousky,Evelyn A**

Branch: 270 — Fifth Avenue

Asst. Manager(s): Conway,Avril P; Hutchinson,Donna

BONUS: 85%    SUPER BONUS: 15%

DRAW: 10%    DRAW: $ 21,800

YTD Actual thru October 31, 2006

D5   R19

| | | 2005 Actual | Tier 1 | Tier 2 | Tier 3 | Tier 4 | Tier 5 | 2006 YTD Actual | 2006 YTD Incentive |
|---|---|---|---|---|---|---|---|---|---|
| **Bonus** | | | | | | | | | |
| **Deposit Growth** | | | 80% | 125% | 150% | | | | |
| Non-Public DDA | Average Balance | $ 46,511,331 | $ 46,883,422 | $ 46,976,444 | $ 47,092,723 | $ 47,209,901 | | $ 7,537,185 | $ 0 |
| | | | of Tier 2 Growth | 1% Growth | of Tier 2 Growth | of Tier 2 Growth | | | |
| | Growth $ | | $ 372,091 | $ 465,113 | $ 581,392 | $ 697,670 | | | |
| | Growth % | | 0.80% | 1.00% | 1.25% | 1.50% | | | |
| | Basis Point Incentive | | 25 | 35 | 45 | 55 | | | |
| **Deposit Growth** | | | 75% | | 120% | 140% | | | |
| Non-Public Core IBA | Average Balance | $ 357,831,234 | $ 360,514,968 | $ 361,409,546 | $ 362,125,209 | $ 362,840,871 | | $ 13,080 | $ 13,080 |
| | | | of Tier 2 Growth | | of Tier 2 Growth | of Tier 2 Growth | | | |
| | Growth $ | | $ 2,683,794 | $ 3,578,312 | $ 4,293,975 | $ 5,009,637 | | | |
| | Growth % | | 0.75% | 1.00% | 1.20% | 1.40% | | | |
| | Basis Point Incentive | | 4 | 6 | 8 | 10 | | | |
| **Fee Income: Banking** | | | 98% | | 105% | 108% | | | |
| | Fee Income | $ 830,677 | $ 861,270 | $ 878,947 | $ 922,789 | $ 949,154 | | | |
| | Incentive | | $ 5,791 | $ 11,581 | $ 17,372 | $ 23,163 | | | |
| **Fee Income: NFFA** | | | 98% | | 105% | 108% | | For every $5,000 over Tier 4, earn additional | |
| | Fee Income | $ 8,140 | $ 39,200 | $ 40,000 | $ 42,000 | $ 43,200 | | | |
| | Incentive | | $ 1,159 | $ 2,316 | $ 3,474 | $ 4,633 | | $ 150 | |
| **Expenses** | | | 105% | | 93% | 90% | | For every $15,000 over Tier 4, earn additional | |
| | Expenses | $ 519,453 | $ 582,623 | $ 554,879 | $ 516,037 | $ 499,391 | | | |
| | Incentive | | $ 3,270 | $ 13,898 | $ 20,846 | $ 27,795 | | $ 50 | |

**Servicing**

Earn an incentive of 5 basis points on the YTD average balance of the Private Banking DDA Deposits serviced by the branch. The Servicing incentive cannot exceed $50,000, and Public DDA Deposits serviced by the branch.

**Super Bonus**

| | Potential Incentive | 2006 Target | 2006 YTD Actual | YTD Incentive |
|---|---|---|---|---|
| **Loans Outstanding** * | $ 16,350 | $ 8,225,572 | | $ 0 |
| For every 10% in Loans Outstanding over the 2006 Target, earn an additional 5% of the Potential Incentive. | | | | |
| **Cash Management Points** * | $ 13,080 | 108.00 | 128.50 | $ 13,080 |
| For every 25% in Cash Management Points over the 2006 Target, earn an additional 5% of the Potential Incentive. | | | | |

At least 2 points must be earned in the Merchant Services category:   108.00   8.00

For every 27.00 in Cash Management Points over the 2006 Target, earn an additional $694.

*Must be closed by 12/31/2006.

**Service Shop**

For every Service Shop score above 100%, the "Incentive Before Shops & Draw" will increase by 1%.

| | Number of Service Shop scores above 100%: | 4 | | 3 |
|---|---|---|---|---|

For every Service Shop score below 80%, the "Incentive Before Shops & Draw" will decrease by 1%.

| | Number of Service Shop scores below 80%: | 6 | | 1 |
|---|---|---|---|---|

### Branch Incentive Summary

| | 2006 YTD Actual |
|---|---|
| Non-Public DDA | $ 212,476 |
| Non-Public Core IBA | $ 0 |
| Fee Income: Banking | $ 0 |
| Fee Income: NFFA | $ 0 |
| Expenses | $ 0 |
| Servicing | $ 13,898 |
| Super Bonus | $ 8,903 |
| Incentive Before Shops & Draw | $ 13,080 |
| Net Service Shop | $ 248,357 |
| Incentive Before Draw | $ 12,417 |
| Draw | $ 260,774 |
| | $ (21,800) |
| **Total Incentive Pool** | $ 238,974 |

Exhibit C

# North Fork Bank — 2006 Branch Manager/Assistant Manager Incentive Program

**Branch Manager:** Jankousky, Evelyn A
**Branch:** 270 — Fifth Avenue
**Asst Manager(s):** Conway, Avril P; Hutchinson, Donna

YTD Actual thru October 31, 2006

BONUS: 85%    DRAW: 10%
SUPER BONUS: 15%    DRAW: $ 21,800

## Bonus

| | 2005 Actual | Tier 1 80% | | Tier 2 | | Tier 3 125% | | Tier 4 150% | | Tier 5 | 2006 YTD Actual | 2006 YTD Incentive |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Non-Public DDA** | | of Tier 2 Growth | | 1% Growth | | of Tier 2 Growth | | of Tier 2 Growth | | | | |
| **Deposit Growth** | | | | | | | | | | | | |
| Average Balance | $ 46,511,331 | $ 46,883,422 | | $ 46,976,444 | | $ 47,092,723 | | $ 47,209,001 | | | | |
| Growth $ | | $ 372,091 | | $ 465,113 | | $ 581,392 | | $ 697,670 | | | | |
| Growth % | | 0.80% | | 1.00% | | 1.25% | | 1.50% | | | | |
| Basis Point Incentive | | 25 | | 35 | | 45 | | 55 | | | | |
| **Non-Public Core IBA** | | 75% | | | | 120% | | 140% | | | | |
| **Deposit Growth** | | of Tier 2 Growth | | 1% Growth | | of Tier 2 Growth | | of Tier 2 Growth | | | | |
| Average Balance | $ 357,831,234 | $ 360,514,968 | | $ 361,409,546 | | $ 362,125,209 | | $ 362,840,871 | | | | |
| Growth $ | | $ 2,683,734 | | $ 3,578,312 | | $ 4,293,975 | | $ 5,009,637 | | | | |
| Growth % | | 0.75% | | 1.00% | | 1.20% | | 1.40% | | | | |
| Basis Point Incentive | | 4 | | 6 | | 8 | | 10 | | | | |
| **Fee Income: Banking** | | 98% | | 2006 Budget | | 105% | | 108% | | For every $15,000 over Tier 4, earn additional $ 150 | | |
| | | of 2006 Budget | | | | of 2006 Budget | | of 2006 Budget | | | | |
| Fee Income | $ 830,677 | $ 861,270 | | $ 878,847 | | $ 922,789 | | $ 949,154 | | | | |
| Incentive | | $ 5,791 | | $ 11,581 | | $ 17,372 | | $ 23,163 | | | | |
| **Fee Income: NFFA** | | 98% | | 2006 Budget | | 105% | | 108% | | For every $5,000 over Tier 4, earn additional $ 50 | | |
| | | of 2006 Budget | | | | of 2006 Budget | | of 2006 Budget | | | | |
| Fee Income | $ 8,140 | $ 39,200 | | $ 40,000 | | $ 42,000 | | $ 43,200 | | | | |
| Incentive | | $ 1,158 | | $ 2,316 | | $ 3,474 | | $ 4,633 | | | | |
| **Expenses** | | 105% | | 2006 Budget | | 93% | | 90% | | | | |
| | | of 2006 Budget | | | | of 2006 Budget | | of 2006 Budget | | | | |
| Expenses | $ 519,453 | $ 582,623 | | $ 554,879 | | $ 516,037 | | $ 499,391 | | | | |
| Incentive | | $ 6,949 | | $ 13,898 | | $ 20,846 | | $ 27,795 | | | | |

## Servicing

Earn an incentive of 5 basis points on the YTD average balance of the Private Banking DDA average balance, Private Banking Core IBA Deposits,
and Public DDA Deposits serviced by the branch. The Servicing incentive cannot exceed $50,000.

## Super Bonus

| | Potential Incentive | 2006 Target | 2006 YTD Actual | YTD Incentive |
|---|---|---|---|---|
| **Loans Outstanding \*** | $ 16,350 | $ 8,226,572 | $ 7,537,185 | $ 0 |
| For every 10% in Loans Outstanding over the 2006 Target, earn an additional 5% of the Potential Incentive. | | | | |
| For every $822,657 in Loans Outstanding over the 2006 Target, earn an additional $818. | | | | |
| **Cash Management Points \*** | $ 13,080 | 108.00 | 128.50 | $ 13,080 |
| At least 2 points must be earned in the Merchant Services category: | | 8.00 | | |
| For every 25% in Cash Management Points over the 2006 Target, earn an additional 5% of the Potential Incentive. | | | | |
| For every 27.00 in Cash Management Points over the 2006 Target, earn an additional $654. | | | | |
| **CRA Credits** | $ 3,270 | 4 | 3 | $ 0 |
| \* Must be closed by 12/31/2006. | | | | |

## Service Shop

For every Service Shop score above 100%, the "Incentive Before Shops & Draw" will increase by 1%.
Number of Service Shop scores above 100%:
For every Service Shop score below 80%, the "Incentive Before Shops & Draw" will decrease by 1%.
Number of Service Shop scores below 80%: 1

## Branch Incentive Summary

| | |
|---|---|
| Non-Public DDA | $ 63,100 |
| Non-Public Core IBA | |
| Fee Income: Banking | $ 13,080 |
| Fee Income: NFFA | $ 0 |
| Expenses | |
| Servicing | $ 13,080 |
| Super Bonus | $ 8,903 |
| **Incentive Before Shops & Draw** | $ 13,080 |
| Net Service Shop | $ 99,237 |
| **Incentive Before Draw** | $ 4,962 |
| Draw | $ 104,199 |
| | $ (21,800) |
| **Total Incentive Pool** | $ 82,399 |

Exhibit D

VLADECK, WALDMAN, ELIAS & ENGELHARD, P.C.
COUNSELORS AT LAW
1501 BROADWAY
NEW YORK, N.Y. 10036
TEL 212/403-7300
FAX 212/221-3172



February 8, 2007

<u>FEDERAL EXPRESS</u>
Mr. John Adam Kanas
Chief Executive Officer
North Fork Bank
275 Broadhollow Road
Melville, NY  11747

      Re:   <u>Evelyn Jankousky</u>

Dear Mr. Kanas:

      We have been retained by Evelyn Jankousky, the Branch Manager for North Fork's NYC-Fifth Avenue branch.  After reviewing the information provided to us by Ms. Jankousky concerning her employment, we have advised her that the bank has violated New York labor law and discriminated against her because of her sex with respect to her 2006 bonus. Ms. Jankousky has informed us that, despite the bank's agreement that her 2006 bonus calculation would be based on the total deposit growth for all non-public demand deposit accounts in the NYC-Fifth Avenue branch, the bank does not intend to include all such accounts in her bonus calculation.  As a result, her 2006 bonus compensation will be significantly diminished.  The bank has also given Ms. Jankousky performance warnings that are unwarranted, discriminatory, and retaliation for her complaints about her bonus calculation.

      Because Ms. Jankousky would prefer to avoid litigation with her employer, we are prepared to discuss with you, or your delegate, terms on which this matter can be amicably resolved.  We look forward to hearing from you.

      Very truly yours,

      Karen Cacace

242869 v1