UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------X
EVELYN A. JANKOUSKY,

                                                     *08 Civ. 1858 (PAC)*

                Plaintiff,

      -against-                         **DEFENDANT'S RULE 56.1**
                                                      **STATEMENT IN SUPPORT OF**
CAPITAL ONE, NA,                      **CROSS-MOTION**

                Defendant.
-------------------------------------------------------X

      Defendant, Capital One, NA, pursuant to Local Rule 56.1, sets forth the material facts as to which there is no genuine issue to be tried.

      1. During 2006 and through March 12, 2007, plaintiff was the branch manager of Capital One, NA's, "Bank", Fifth Avenue branch. (Santamaria affidavit ¶1)

      2. Plaintiff earned a salary of $125,000. (Plaintiff's 56.1)

      3. Plaintiff had the opportunity to earn incentive compensation in 2006 by reason of the Bank's 2006 Incentive Compensation Plan for Branch Managers, "Plan". (Pfundstein affidavit ¶2)

      4. The purpose of the Plan was to increase branch deposits and plaintiff could earn incentives for such increases pursuant to the Plan terms. (Plan, Pfundstein affidavit ¶3)

      5. Housed in plaintiff's branch was a customer "Customer L" who maintained a very large money market account, "MMA". (Pfundstein affidavit ¶8)

      6. Customer L's MMA was established in 2003 and during 2005 large deposits were made thereto. (Pfundstein affidavit ¶8)

      7. As a result of the deposits to Customer L's MMA, the deposit base of plaintiff's branch doubled and resulted in maximum incentive compensation being paid in 2005. (Pfundstein affidavit ¶8)

8. Customer L utilized the MMA as its transaction account, engaging in transactions which far exceeded the limits of Federal Regulation D.  (Pfundstein affidavit ¶8)

9. Plaintiff was aware of such violations since mid-2005.  (Plaintiff deposition p. 43)

10. It was plaintiff's obligation to monitor MMA for compliance with Federal Regulation D. (Systems and Procedures Manual E-10)

11. In April, 2006, in order to comply with Federal Regulation D the MMA was changed to a demand deposit account, "DDA".  (Santamaria affidavit ¶8, plaintiff's deposition p. 47)

12. As a result of the account type change, no new money was brought into plaintiff's branch.  (Santamaria affidavit ¶8)

13. The Plan provided for incentives to be paid at different levels, dependent upon the deposit account type being increased by new deposits.  Average yearly balances were utilized. (Plan)

14. The change of account type from MMA to DDA made it appear as though an actual increase in DDA deposits had occurred, when, in fact, no new money was placed on deposit. (Pfundstein affidavit ¶9)

15. Incentive was computed in the first instance on yearly average balances.  (Plan)

16. The average balance in the newly designated DDA was $24,800,000 from the time of the change in April, 2006, through December 31, 2006.  (Pfundstein affidavit ¶9)

17. In preliminarily computing plaintiffs incentive for 2006 the average balance in DDA was adjusted by removing therefrom the effect of the $24,800,000 average for the period of April-December and adding such amount back into MMA.  (Pfundstein affidavit ¶10)

18. Plaintiff's preliminary incentive compensation for 2006 was computed at $83,456.00.  (Pfundstein Ex. 3)

19. Pursuant to the Plan, participants on a written warning may have incentive suspended or forfeited in management's discretion.  (Plan, plaintiff deposition p. 150-151)

20. Plaintiff received a written warning on January 9, 2007, with respect to her performance in 2006.  (Santamaria affidavit ¶16)

21. Plaintiff signed the warning which provided for suspension of the incentive. (Santamaria affidavit ¶16, plaintiff's deposition p. 162)

22. Plaintiff's employment was terminated in March, 2007, for performance issues by written memorandum.  (Santamaria affidavit ¶16)

23. Incentive under the Plan was earned after preliminary computation and review with an "as of" date of December 31, subject to suspension and forfeiture.  (Pfundstein affidavit ¶6, Roberto affidavit ¶6, Plan)

24. Paul Santamaria was a district manager and supervised plaintiff in 2006 and 2007. (Santamaria affidavit ¶1)

25. Paul Santamaria, while a district manager, hired 21 branch managers – 12 were men and 9 were women.  (Santamaria affidavit ¶21)

26. Paul Santamaria, while a district manager, terminated the employment of 7 branch managers – 4 were men and 3 were women.

27. During 2006, plaintiff refused to take directions from Paul Santamaria in handling overdrafts.  (Santamaria affidavit ¶22-25, 43-45)

28. During 2006, plaintiff violated proper banking procedures repeatedly with respect to handling stop payment requests.  (Santamaria affidavit ¶26, 31, 32)

29. During 2006, plaintiff granted fee refund accommodations to customers with low balances and overdraft activity in violation of Paul Santamaria's directions and the best interests of the Bank.  (Santamaria affidavit ¶27)

30. During 2006, plaintiff's branch suffered a loss as a result of Plaintiff's honoring overdrafts on an account with carried a $0 balance and which was already overdrawn at the time. (Santamaria affidavit ¶28)

31. During 2006, plaintiff's branch suffered a loss as a result of the failure to deal properly with a new customer and placed extended holds on the account. (Santamaria affidavit ¶29)

32. During 2006, plaintiff repeatedly failed to properly complete wire transfer request forms, including corporate resolutions and signature cards. (Santamaria affidavit ¶33)

33. During 2006, plaintiff made a request for a preferential deposit rate without verifying any of the details concerning the transaction or the proposed depositor. (Santamaria affidavit ¶34)

34. Plaintiff was verbally counseled in May, 2006, about her operational deficiencies and failure to take direction. (Santamaria affidavit ¶35)

35. Paul Santamaria reviewed plaintiff's 2006 performance in December, 2006 and again brought her shortcomings to her attention. (Santamaria affidavit ¶35)

36. During 2006, plaintiff was aware that customer service representatives in her branch were falsifying documentation in order to earn incentives and did not terminate them from the program as required by the proper documents or place them on written warning. (Santamaria affidavit ¶37-42)

37. During 2007, plaintiff failed to handle routine customer fee refund requests and referred the customer to an executive vice-president without his approval resulting in his family receiving telephone communication in their house. (Santamaria affidavit ¶46)

38. Plaintiff's incentive under the Plan and her discipline was unrelated to her sex. (Santamaria affidavit ¶20, 48)

39. Plaintiff never made any complaint regarding sex discrimination to her superiors.

(Roberto affidavit ¶9, plaintiff deposition p. 163-166)

40. Plaintiff never made any complaint to human resources regarding sex discrimination.

(Roberto affidavit ¶9, plaintiff deposition p. 163-166)

Dated: Melville, New York
       August 16, 2010

    Yours, etc.,

    WICKHAM, BRESSLER, GORDON & GEASA, P.C.

    By: /s/
        Eric J. Bressler (EB3412)
    Attorneys for Defendant
    275 Broadhollow Road, Suite 111
    Melville, New York 11747
    631-249-9480

TO:   Maia Goodel (MG 8905)
      Vladeck, Waldman, Elias & Engelhard, P.C.
      Attorneys for Plaintiff
      1501 Broadway, Suite 800
      New York, New York 10036
      212-403-7300